The Black River Bank, Respondent, *v.* Orville Page and John C. Preston, Appellants.

A request, made by sureties to a creditor, to enforce securities held by the latter from their principal, to the end that they may be discharged by satisfaction of the debt, does not impose upon the creditor an absolute duty to enforce such securities without delay. It is only necessary that the creditor act in good faith and be free from gross neglect.

If the creditor unreasonably delays, or acts in bad faith, or is grossly negligent, whereby the value of the securities is impaired, the loss thus occasioned is a defence, to that extent, available to the sureties; but mere delay will not suffice to discharge them.

(Argued for the respondent and submitted by the appellants, January 12th; decided May 1st, 1871.)

Appeal from an order of the General Term of the Supreme Court, in the fifth district, affirming a judgment in favor of the plaintiff, upon trial by the court without a jury.

April 13, 1860, G. M. Frazell made his note at three months, payable at plaintiff's bank, to the order of William Frazell, for $1,000, and the note was indorsed by the payee and by the defendants, and transferred to the plaintiff.

After this note matured, and about July 28, G. M. Frazell absconded, leaving, so far as appears, no property in this State. The plaintiff then held another note of $500, made by G. M. Frazell, and indorsed by William Frazell, but not by the defendants.   The Jefferson County Bank held a judgment against the Frazells for $367.09, and one Emerson held a mortgage against William Frazell for $1,000, on his house and lot.    All these debts amounted, July 28, 1860, to $2,867.09 besides some interest.

To secure to the plaintiff the amount due upon the said two notes, being then $1,502.54, it, without the knowledge of the defendants, procured William Frazell to execute to its president, Mr. Paddock, a deed of his house and lot and a mortgage upon some household furniture, both dated July 28.   On the same day, Mr. Paddock executed to said Frazell an agreement to re-convey the real estate, when plaintiff's debt should be paid; and Frazell executed a paper, to the effect that the transaction should not be deemed an extension, or affect the liability of subsequent indorsers, but that the note should remain in full force, past due, and liable to be prosecuted.   So far as appeared, the property covered by the deed and mortgage was all the property owned by William Frazell.

August 27, 1860, the defendant Page took an agreement from William Frazell, directing that any surplus, arising from the securities given by him to the plaintiff, should be applied for his benefit upon other claims for which he was liable; and he was, at the same time, informed of the securities taken by the plaintiff, and that there was no extension upon the notes; and he was offered all the securities, if he would take and pay the two notes held by the plaintiff, which he declined.   He then requested the bank to proceed at once and realize the money upon the securities, and thus discharge him.

June 27, 1861, Emerson foreclosed his mortgage upon the real estate for non-payment of the interest, and, at a fair public sale, it was bid off by Paddock (for himself, and not for the bank), for $2,450. The amount then due upon the mortgage was $1,149.33. The surplus, after first paying the above mentioned judgment, which was a lien upon the real estate, was applied to pay the $500 note, and the balance upon the other note.

In July, 1861, the plaintiff, after giving public notice, foreclosed the personal mortgage, and realized fifty-four dollars. After applying this sum upon the said note, there remained due $636, to recover which this action was commenced.

It was not proved whether William Frazell was or was not insolvent at the time he gave the deed; but the proof tended to show that he was.

It was proved that the real estate was, in fact, worth more than $2,450, when Paddock bid it off, and that he afterwards gave it to his son, and that the latter sold it for $3,000. It was also proved that the furniture mentioned in the mortgage was worth about $600, at the time the mortgage was given, The personal mortgage contained a clause reserving from this furniture all the property exempt from execution. But it was not proved how much was exempt, nor what the exempt property was worth. It was also shown that, without the knowledge of the plaintiff, much of the property was removed, and inferior property put in its place and sold as the mortgaged property.

The defendants had no notice of either mortgage sale, and were not present at either. The cause was tried at the Jefferson circuit, in November, 1863, before the judge, without a jury; where the foregoing facts appeared, and the judge found, as conclusions of law, as follows:

1st. That there was no extension of the debt of the principal debtor, to the injury or detriment of the surety, or any arrangement which operated to the discharge or exoneration of his liability; that all he had a right to claim was the privilege of being subrogated to the right of the bank, on satisfac

tion of their claims, which at all times it was in his power to obtain and enforce.

2d. That there is no evidence whatever of any fraudulent disposition of the property placed in the hands of the bank or its financial officers, or any means taken by which it was made to produce less than its fair value on an open and public sale subject to competition.

3d. That the plaintiff owed the defendant no such duty as required it to pay off the $1,000 mortgage or the judgment, or to stay the foreclosure and sale of the premises, or give notice thereof to the defendants. All the obligation resting on the plaintiff was the exercise of good faith in dealing with the securities and the subject-matter thereof; and the evidence discloses no want of good faith, such as the law exacts, in the conduct of the plaintiff.

And he ordered judgment in favor of the plaintiff for the balance due upon the note. The defendants appealed to the General Term of the fifth district, and, from judgment of affirmance there, to this court.

*F. W. Hubbard,* for the appellants, as to whether the defendants were discharged, cited *King* v. *Baldwin* (17 Johns., 384); *Pain* v. *Packard* (13 id., 174); *Fulton* v. *Matthews* (15 id., 433); *Warren* v. *Beardsley* (8 Wend., 194); *Herrick* v. *Borst* (4 Hill, 650); *Remsen* v. *Beekman* (25 N. Y., 552); 1 Story Eq., §§ 325, 326; *Hayes* v. *Ward* (4 Johns. Ch., 123); *Griswold* v. *Jackson* (2 Edw., 461); *Sally* v. *Elmore* (2 Paige, 497).

*James F. Starbuck,* for the respondent, reviewed the authorities cited for appellants, *supra;* and cited *Stafford* v. *Williams* (4 Denio, 182); *Fuller* v. *Wilcox* (19 Wend., 351); 21 id., 305; 3 Hill, 75; 4 N. Y., 247; 9 id., 100; *Seaman* v. *Luce* (23 Barb., 240); *Lockwood* v. *Younglove* (27 id., 505); 31 N. Y., 648.

EARL, C. It is claimed, on the part of the appellants, that the court erred at the circuit, in not holding that the funds real-

ized by the plaintiff out of the property transferred to it should have been applied *pro rata* upon the two notes.   It is a sufficient answer to this claim that it was not made in the answer, nor upon the trial, and that there is no exception that brings it properly before us.   The main point in this case, therefore, is, whether the defendants established any defence from the manner in which the plaintiff conducted in reference to the property transferred to it as security by William Frazell.

I will assume, as claimed on the part of the appellants, that the defendants hold the position and have all the rights of sureties for both the maker and the prior indorser; and, upon this assumption, they are still without any defence.   They did not request the plaintiff to prosecute the Frazells personally. If they had, it would have made no difference, as there is no proof that either of them was solvent at the time, or became insolvent afterward.

The plaintiff was requested by one of the defendants to enforce and realize upon the securities held by it.   This did not impose the absolute duty upon the plaintiff to proceed at once.   It held these securities for two notes, upon one of which the defendants were not indorsers.   It was to judge, acting in good faith, when it was best to convert them.  · If it delayed unreasonably, or was guilty of bad faith or gross negligence, in the care and management of the property mortgaged to it, and the securities were thus damaged, they would undoubtedly, to the extent of such damage, have a defence to the note. (*Hayes* v. *Ward*, 4 Johns. Ch., 123 ; 1 Story's Eq. Jur., 501 ; *Herrick* v. *Borst*, 4 Hill, 650.)   Here the court found that the plaintiff acted in good faith, and was not guilty of culpable neglect.

The delay was less than a year.   Instead of foreclosing its mortgage upon the real estate, the plaintiff suffered the Emerson mortgage to be foreclosed.   The property was sold at a fair public sale, and effort appears to have been made to obtain the highest price.   There is no proof that the mortgage could have been, or ought to have been foreclosed sooner; that the property would have sold for more at an earlier day ; or that

any one was damaged by the delay. There was some proof that the property was worth more than it sold for at the mortgage sale; but this circumstance cannot affect the plaintiff. It was not bound to bid the property up, or to procure bidders, all the notice having been given which the law required. I do not see upon what ground the plaintiff can be made liable for the value of this property at the time of the sale, or for the amount for which Paddock's son was afterward able to sell it. The sale was public, open to all bidders; Paddock bid off the property for himself, and gave it to his son, having paid the amount of his bid. Emerson paid over the surplus, after satisfying the amount of his mortgage and costs, to the plaintiff; and for this surplus the plaintiff became accountable. Hence I see no complaint which the defendants can make as to the real estate. It is sufficient, as to that, that they have shown no damage by the delay, or the manner in which it was treated or managed by the plaintiff.

As to the personal property, there was no proof or finding that it had deteriorated materially by the delay. The mortgage was legally foreclosed by a public sale, after posting notices. It is true that the mortgagor, or some one else, had removed the best of the furniture and substituted other furniture in its place. But this was done without the knowledge or fault of the plaintiff. It does not appear when this was done, or that it was in any way the result of, or caused by the delay, or by the act or conduct of the plaintiff or its agents. The mortgagor had the right to claim, out of the property named in the mortgage, all that was exempt from execution; and there is no evidence that, if the plaintiff had at once foreclosed this mortgage, it would have realized any more than it finally did.

I know of no rule of law that required the plaintiff to notify the defendants of the sales. They had not requested to be notified, and took no measures to procure notice. It may be that the plaintiff was, as claimed by the counsel for the appellants, in some sense a trustee for all the persons interested in the securities it had taken from Frazell. But if we

assume this to be so, I do not see how it will aid the appellants, as there is no proof or finding that there was any breach of the supposed trust, or that the defendants were in any way damnified by the conduct of the plaintiff.

Upon the case, therefore, as presented to us upon the evidence and findings of the judge, I can see no reason for disturbing the judgment, and favor its affirmance, with costs.

All concur for affirmance.

Judgment affirmed, with costs.