**ISTITUTO MOBILIARE ITALIANO, S.p.A., Plaintiff,**

**v.**

**MOTOROLA, INC., Defendant.**

**No. 87 C 10855.**

United States District Court, N.D. Illinois, E.D.

June 14, 1988.

David C. Todd, Patton, Boggs & Blow, Washington, D.C., Patricia W. Hatamyar, Sonnenschein, Carlin, Nath & Rosenthal, Chicago, Ill., for plaintiff.

Garrett B. Johnson, Helen E. Witt, Kirkland & Ellis, Chicago, Ill., Thomas D. Yannucci, John M. Walker, Kirkland & Ellis, Washington, D.C., for defendant.

## ORDER

BUA, District Judge.

Plaintiff instituted this action to compel payment of a loan guarantee agreement. Jurisdiction is provided under 28 U.S.C. § 1332(a) as this action is between a citizen of a foreign state and a citizen of a state and the matter in controversy exceeds the sum of $10,000. Venue is proper in this district pursuant to 28 U.S.C. § 1391(a), (c) as defendant is a Delaware corporation with its principal place of business in Schaumburg, Illinois.

Before this court is plaintiff's motion for summary judgment. For the reasons stated herein, plaintiff's motion is granted.

### I. FACTS

In March 1977, plaintiff Istituto Mobiliare Italiano S.p.A. ("IMI"), an Italian corporation, entered into an agreement to loan Autovox, S.p.A. ("Autovox") an Italian electronics manufacturer, 8,480,000,000 Italian lire. Autovox, at the time of the loan, was a subsidiary of defendant Motorola, Inc. ("Motorola"). To secure the loan, Autovox granted IMI a lien on all its equipment and machinery and a mortgage on its real estate. As additional security, Motorola agreed to unconditionally guarantee payment of up to 50% of amounts due under

the loan in the event of default by Autovox. In May 1980, Motorola increased its guarantee to 55%. The guarantee agreement expressly indicated that the nature of guarantee was one of payment and not collection and IMI was not obligated to obtain a judgment against Autovox or await its bankruptcy or insolvency before pursuing payment from Motorola. The agreement also provided that New York law would govern the guarantee.

After the guarantee agreement was made, Autovox went through a series of changes. In June 1980, Motorola transferred its entire interest in Autovox to Genfinco A.G. ("Genfinco"), a Swiss corporation controlled by Giovanni Mario Ricci. In return, Ricci, individually and on behalf of two companies he controlled, Genfinco and Unifinco A.G., agreed to indemnify Motorola from any liability arising under the IMI guarantee. Almost three years later, on March 16, 1983, Autovox was sold to Franco Cardinali and Francesco Sciannameo, two Italian businessmen who served on Autovox' board of directors. Both Cardinali and Sciannameo, as a condition of the sale, agreed to indemnify Motorola under its guarantee agreement with IMI. The sale to Cardinali and Sciannameo was necessary to ensure Autovox' inclusion in a special government program designed to revitalize and restructure Italian-owned electronics businesses. Apparently, if admitted into the restructuring program, Autovox was to benefit in two ways. First, Autovox would raise capital through the sale of equity securities to a corporation controlled by the Italian government. Second, Autovox would receive a low interest 15 billion lire loan. According to the restructuring plan developed for Autovox, substantially all of Autovox' assets and liabilities were transferred to Nuova Autovox, S.p.A. ("Nuova Autovox") sometime in the summer of 1983.

The 1977 loan agreement provided that Autovox was to repay IMI on a biannual basis with specified installments due the first day of each January and July during the life of the loan. Autovox performed under the loan agreement until 1983. Correspondence between IMI and Motorola indicates that Autovox failed to make the payment due on January 1, 1983. After IMI forwarded Motorola notice of the default, Autovox' President and major shareholder, Franco Cardinali, paid the January installment with private funds on Autovox' behalf. Cardinali apparently told IMI that in a short time he expected to pay the July installment which at that time had also fallen due. In a letter dated August 5, 1983, IMI reported to Motorola receipt of the January payment and Cardinali's promises concerning the July installment. IMI also made clear that Cardinali's promise to pay did not alter Motorola's guarantee obligations. However, no further payments were ever effectuated by Autovox or Cardinali. Defaults occurred on July 1, 1983; January 1, 1984; July 1, 1984; January 1, 1985; July 1, 1985; and July 17, 1985. All defaults except the July 17, 1985 default resulted from failure to pay a scheduled installment in whole or in part. The July 17, 1985 default occurred because Autovox was placed in compulsory liquidation proceedings in Italy.

Records submitted indicate that between March 1984 and October 1985, Nuova Autovox made several partial payments in an attempt to rescue the loan from default. Unfortunately, Nuova Autovox failed in its efforts. In July 1987, Nuova Autovox was admitted to controlled proceedings before an Italian court of composition.

Motorola was timely notified of all defaults by letters sent by IMI in accordance with the terms of the guarantee. By subsequent letters dated January 27, 1986; July 18, 1986; December 16, 1986; and January 2, 1987, IMI reiterated its request for payment by Motorola. Motorola, however, refused to effectuate payment under the guarantee. As of January 31, 1987, the amount owed by Motorola under the guarantee was 2,362,790,927 Italian lire. Interest on this amount has continued to accrue for the period subsequent to January 31, 1987.

## II. DISCUSSION

Summary judgment is appropriate only when the moving party establishes no ma-

terial issues of fact exist and demonstrates he is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The mere existence of a factual dispute will not defeat an otherwise properly supported motion for summary judgment. *Id.* The standard requires that no genuine issue of material fact exist. *Id.*

A. *Documentation of Material Facts*

██ Motorola first resists IMI's motion on the ground that IMI fails to adequately document material facts necessary to establish Motorola's liability under the guarantee. Motorola notes that the motion for summary judgment is supported by an affidavit of Pier Giuseppe Gentili, IMI's attorney, which recites facts concerning defaults occurring under the loan, notices and demands forwarded to Motorola, and amounts due under the guarantee. Because the affidavit does not contain a representation that Gentili has personal knowledge of the information contained in his declaration, Motorola urges that it be ignored. Motorola also complains that IMI fails to apprise it of payments made by entities other than Autovox and the amount actually due and outstanding under the loan.

With regard to Motorola's attack on Gentili's affidavit, IMI notes that an amended affidavit has been filed containing an assertion that the facts espoused in his declaration are based on his personal knowledge. Gentili's affidavit, so amended, meets the requirements of Fed.R.Civ.P. 56(c) and may be considered in determining IMI's motion. Motorola's assertions concerning lack of information concerning payments made and amounts outstanding are unpersuasive. Documents sent to Motorola during discovery and submitted as exhibits in connection with IMI's motion clearly establish the date of the defaults, the amount of the defaults, and the amounts paid on the loan by the identity of the payer. The documents indicate that as of January 31, 1987, the amount owed by Motorola under the guarantee is 2,362,790,926 Italian lire plus interest which has accrued subsequent to January 31, 1987. Thus, contrary to Motorola's assertions, IMI has established Autovox defaulted on the loan and the amount of the unpaid loan owed by Motorola to IMI.

B. *Bad Faith*

Motorola next attacks IMI's motion alleging that IMI acted in bad faith by acquiescing to the transfer of collateral from Autovox to Nuova Autovox. New York law implies, where appropriate, a general obligation of good faith and fair dealing on the part of every party to a contract. *Murphy v. American Home Products Corp.*, 58 N.Y.2d 293, 304–05, 461 N.Y.S.2d 232, 448 N.E.2d 86 (1983). This general obligation is implied to further the other terms of the parties' agreement. *Id.* Motorola asserts that IMI's conduct regarding the transfer of collateral resulted in a breach of IMI's implicit duty of good faith and provides a defense to payment.

Although an implied covenant of good faith and fair dealing may exist in the guarantee agreement, IMI need not resort to collateral securing the loan before pursuing Motorola for payment. The terms of the guarantee at issue make clear that it is one of payment, not collection. Contrary to Motorola's assertions, New York law does not require a creditor to proceed against collateral prior to seeking recovery under a guarantee of payment:

> Where there is an absolute unconditional guarantee of payment, the creditor is not required to resort to collateral securities for the payment of the debt which are in his possession, before instituting an action against the guarantor, unless the contract expressly provides for such resort to collateral.

63 New York Jurisprudence 2d § 235 (1987).

██ Although a duty to deal fairly and act in good faith may be implicit in the guarantee, this obligation may not conflict with other terms of the agreement. Where two parties enter an agreement according certain rights and privileges to each, courts will not apply the covenant of good faith and fair dealing to impair such rights. *See Murphy*, 58 N.Y.2d at 305, 461 N.Y.S.2d 232, 448 N.E.2d 86 (implied duty of

good faith and fair dealing in at-will employment contract does not alter employer's unqualified right of discharge). In the present case, the terms of the parties' agreement unequivocally state the guarantee is one of payment. The agreement contains no language limiting the terms of the guarantee. Instead, the agreement recites that in the event of default by Autovox, IMI was not required to secure a court judgment against Autovox or await bankruptcy or insolvency proceedings before obtaining payment under the guarantee. Although Motorola makes cryptic overtures concerning IMI's status as a government-owned corporation and Nuova Autovox' participation in a government-sponsored restructuring, Motorola does not suggest it is aware of any evidence of collusion. Hypothetical suggestions of collusive behavior are insufficient to substantiate Motorola's claim that IMI acted in bad faith. Since the guarantee is one of payment and without condition, IMI possessed the unfettered right of pursuing Motorola as guarantor without first resorting to collateral securing the loan. IMI's reasons for seeking payment under the guarantee before acting against the security are therefore irrelevant. As such, IMI did not breach its duty of good faith and fair dealing by electing to seek payment under the guarantee rather than resorting to the collateral.[1]

■ Motorola next argues that IMI acted in bad faith by failing to adequately apprise Motorola of its relationship with Nuova Autovox. Motorola asserts that after Autovox transferred its assets and liabilities to Nuova Autovox, IMI failed to clearly indicate whether it had accepted Nuova Autovox' assumption of the loan obligation. As a result, Motorola contends that it could not be sure that if it effected payment under the guarantee, it would have had any right to act against the collateral securing the loan.

Correspondence between the parties after the assets and liabilities were transferred indicates that IMI, when asked by Motorola, responded promptly that it had not yet accepted Nuova Autovox' assumption of liability under the loan. Apparently, IMI feared that express acceptance of Nuova Autovox would effectively relieve Autovox of its obligations to IMI under Italian law and thus impair Motorola's subrogation rights. Although refusing to grant express acceptance, IMI continued to collect payments made by Nuova Autovox and apply them to sums due under the loan. Motorola was informed of each of Nuova Autovox' payments but reminded that IMI's acceptance of such payments did not affect Motorola's obligations under the guarantee.

Whether IMI's formal acceptance would have had the effect of discharging Autovox under Italian law is irrelevant, however, because acceptance by IMI was not prerequisite to Nuova Autovox' liability under the loan. Italian law, which applies due to the location of the debtors and collateral, provides that a transferee of a commercial business is liable for the debts transferred; the transferor also remains liable, unless the creditors release the transferee from its debts.[2] By operation of law, Nuova Autovox, as transferee of the assets and liabilities of Autovox, assumed Autovox'

---

**1.** Motorola also appears to suggest that IMI had a duty to pursue Nuova Autovox before turning to the guarantee for payment. However, no such requirement exists under New York law. Where the guarantee is one of payment, not collection, and the principal debtors default, the creditor is not required to pursue the principal debtors prior to seeking recovery from the guarantor. *General Phoenix Corp. v. Cabot*, 300 N.Y. 87, 89 N.E.2d 238, 241–42 (1949) (reversing denial of summary judgment); *First Nat'l Bank v. Jones*, 219 N.Y. 312, 114 N.E. 349, 350 (1916) (creditor's right of action on unconditional guarantee of payment arises on default of prin-

cipal debtor); 63 New York Jurisprudence 2d, § 231 (1987).

**2.** Italian Civil Code § 2560: "Debts of a transferred business. The transferor is not released from debts incurred in the operation of a transferred business prior to the transfer, unless it is shown that the creditors consented to such release.

In the transfer of a commercial business, the transferee is also liable for such debts, if they are shown in the mandatory accounting books." Beltramo, et al., *The Italian Civil Code* (1969).

obligations under the loan.[3] IMI did nothing to release Autovox from the debt so Autovox also remained equally liable. No suggestion is made that the security interest in the underlying collateral failed to survive the transfer. Motorola, at all times, had the option of honoring its commitment under the guarantee and pursuing Nuova Autovox and/or the collateral for reimbursement. IMI's conduct regarding its refusal to expressly accept Nuova Autovox' assumption of Autovox' obligations had no effect on Motorola's subrogation rights. Thus, Motorola's argument concerning IMI's alleged bad faith in declining formal acceptance is without merit.

### C. *Impairment of Collateral*

Motorola also claims that IMI's failure to promptly resort to assets securing the loan after Autovox' default resulted in an impairment of collateral. This argument stems from events occurring after Autovox' assets and liabilities were transferred to Nuova Autovox in 1983. In July 1987, Nuova Autovox entered "composition proceedings" in Italy. The effect of these proceedings apparently prevents secured creditors from resorting to Nuova Autovox' assets for a prescribed period of time. Because IMI failed to act against assets securing the loan before Nuova Autovox entered composition proceedings and the value of Motorola's subrogation rights were thereby diminished, Motorola asserts that IMI breached its duty to preserve Motorola's interests in the collateral.

■ Although Motorola is correct in observing that impairment of security resulting from a creditor's unreasonable conduct, negligence or bad faith normally discharges a surety from liability to the extent of the impairment,[4] the defense of impairment of collateral is not available to one who has given an unconditional guarantee of payment. As stated in *Walter E. Heller & Co. v. Cox*, 343 F.Supp. 519, 526 (S.D.N.Y.1972), *aff'd without opinion*, 486

F.2d 1398 (2d Cir.1973): "The authorities agree that one who unconditionally guaranties an indebtedness is not released or discharged by virtue of any lack of diligence with respect to, or release or impairment of, collateral by a secured creditor." The highest court of New York articulated this principle in 1882, in a case involving a creditor who sued on a guarantee after the value of the property securing the loan depreciated and the principal debtor became insolvent:

> The general rule is well settled, that mere delay by a creditor to collect of the principal debtor, or to proceed against a fund pledged by him for the payment of the debt, will not exonerate the surety or affect his liability, notwithstanding loss may have resulted from the delay.

*Newcomb v. Hale*, 90 N.Y. 326, 331 (1882). *See also United States v. Shirman*, 41 F.R.D. 368, 373 (N.D.Ill.1966) ("A guarantor of payment, as distinguished from a guarantor of collection, cannot avail himself of the defense that the creditor through negligence, or the lack of due diligence, lost or dissipated the collateral furnished by the debtor.") (granting summary judgment).

■ The duty of a creditor to act against collateral security to preserve a surety's subrogation rights appears to be premised on the creditor's retention and control of the collateral:

> In most circumstances, a failure of the creditor to enforce collateral does not discharge the surety. On the other hand, if a creditor who holds collateral security fails to proceed to enforce it, he may to the extent of any loss suffered by a surety discharge the surety *pro tanto* if the creditor's inaction amounts to bad faith or gross negligence in the care and management of the property.

63 New York Jurisprudence 2d § 237 (1987) *citing Black River Bank v. Page*, 44 N.Y. 453 (1871) (surety fails to prove creditor

---

**3.** IMI also asserts that agreements executed by Nuova Autovox in connection with the transfer of assets provide for assumption of Autovox' liability under the IMI loan. Motorola does not appear to challenge this assertion.

**4.** *See Odal Typographers Inc. v. City of New York*, 560 F.Supp. 558, 560 (S.D.N.Y.1983); *Lafayette Bank & Trust Co. v. Silver*, 58 Misc.2d 891, 296 N.Y.S.2d 926, 927 (N.Y.Sup.Ct.1969).

possessing deed to real estate as security for debt caused value of security to diminish through failure to promptly resort to collateral or failure to properly manage the property). A mortgagee, however, has no duty to look after or protect the mortgaged premises. *Marshall v. Davies,* 78 N.Y. 414, 421–22 (1879). In the present case, collateral securing the loan consists of property subject to mortgages and liens. IMI never possessed or controlled the assets securing the loan. Rather, IMI merely retained a security interest in specified assets of the debtor companies.

■ No case cited by Motorola supports its assertion that an issuer of an unconditional guarantee of payment of a loan secured by mortgaged property is discharged from liability if the value of the collateral has decreased over time. In *First Citizen's Bank & Trust Co. v. Sherman's Estate,* 250 A.D. 339, 294 N.Y.S. 131 (4th Dep't 1937), the bank had misrepresented to the guarantor that it held security collateral that the bank had in fact released before the guarantee was given. Under those circumstances, the court found that the bank had violated the duty it owed to the creditor to correct the false impression it knew that the guarantor had. *Chemical Bank v. Layne,* 423 F.Supp. 869 (S.D.N.Y. 1976), similarly involved a bank's failure to apprise a guarantor of limitations on the value of the collateral prior to the giving of the guarantee. *Executive Bank v. Tighe,* 66 A.D.2d 70, 411 N.Y.S.2d 939 (2d Dep't 1978), *rev'd,* 54 N.Y.2d 330, 445 N.Y.S.2d 425, 429 N.E.2d 1054 (1981), *Mikanis Trading Corp. v. Lowenthal,* 94 Misc.2d 962, 406 N.Y.S.2d 220 (S.Ct.N.Y.Cty.1977) and *Layfayette Bank & Trust v. Silver,* 58 Misc.2d 891, 296 N.Y.S.2d 926 (2d Dep't 1969), all involved a creditor's failure to perfect a security interest. None of those circumstances applies here.

In *Royal Business Funds Corp. v. Ehrlich,* 78 Misc.2d 305, 356 N.Y.S.2d 407 (Sup. Ct.N.Y.Cty.), *aff'd* 45 A.D.2d 823, 356 N.Y.S.2d 1015 (1st Dep't 1974), evidence suggested that the creditor had mismanaged the operations of the debtor company and depleted assets apparently under its control. Under such circumstances, the trial court held that proof of mismanagement might be a defense to a guarantee. *Odal Typographers, Inc. v. City of New York,* 560 F.Supp. 558 (S.D.N.Y.1983) discussed the control and destruction of collateral by police in a civil rights action against New York City. Both cases are easily distinguished from the present case as IMI never possessed or controlled the assets securing the loan.

Motorola cites many other cases, but none appears to have involved a guarantee of payment. Those cases are therefore of dubious relevance. One such case is *National Sav. Bank v. Fermac Corp.,* 241 A.D. 204, 271 N.Y.S. 836 (3d Dep't 1934), in which the court held that a mortgagee's refusal to accept a first mortgagor's offer to pay the debt deprived the mortgagor of a substantial right and released it from further liability. Motorola, which gave a guarantee of payment, not collection, cannot complain of any diminution in value of collateral where it has balked at paying the debt.

Although Motorola complains that IMI's inaction caused the value of the security to dissipate, the fact remains that Motorola always had the option of effecting payment under the guarantee and pursuing the collateral before Nuova Autovox entered composition proceedings in July 1987. Motorola received timely notice of the first default in 1983 and each default occurring thereafter until July 1985 when the entire amount of the loan became due upon Autovox' admission to liquidation proceedings. Thus, Motorola had ample time to honor its guarantee and exercise its subrogation rights against the assets securing the loan before July 1987. Responding to a similar argument on the part of a guarantor, the New York Court of Appeals in *Newcomb v. Hale,* 90 N.Y. 326, 331 (1882), instructed that the guarantor's "remedy, if he desired to hasten the collection, was to perform his contract and proceed himself to enforce the security." *See also Marshall v. Davis,* 78 N.Y. 414, 421–22 (1879).

In sum, the present status of assets securing the loan is no defense to Motorola's liability under the unconditional guarantee

of payment. Motorola does not suggest that IMI had possession or actual control of the collateral. Any dissipation in the value of Motorola's subrogation rights resulting from Nuova Autovox' admission to composition proceedings is not attributable to IMI but rather to Motorola's own delay in effecting payment under the guarantee and pursuing the security itself. Motorola therefore does not present a viable defense to IMI's motion on the basis of impairment of collateral.

### D. *Unsupported Affirmative Defenses*

■ Motorola's response to IMI's motion mentions the affirmative defenses of laches, unclean hands and estoppel. Although it is unclear whether Motorola seeks to invoke these defenses, it is clear that Motorola fails to identify any facts upon which their assertion might be based. Simply reciting a boilerplate list of affirmative defenses without providing any factual analysis to support their invocation will not defeat a properly supported motion for summary judgment.

### E. *Indispensable Parties*

■ Motorola's response brief also suggests that its indemnitors are indispensable parties who must be joined before any judgment in this case can be entered. As noted earlier, Messrs. Ricco, Cardinali, and Sciannameo as well as Unifinco and Genfinco executed agreements indemnifying Motorola for any claims asserted under the guarantee. Apparently, because these individuals and corporations do not reside or transact business in the United States, jurisdictional barriers prevent Motorola from joining them in this action. Unfortunately, the fact that potential indemnitors exist and are not parties to this action does not prevent the issuance of summary judgment. In the context of Fed.R.Civ.P. 19, the law in this circuit is that potential indemnitors are not indispensable parties. *Pasco Int'l (London) Ltd. v. Stenograph Corp.*, 637 F.2d 496, 503 (7th Cir.1980) ("potential indemnitors have never been considered indispensable parties, or even parties whose joinder is required if feasible"). Although Motorola cites *Whyam v. Piper*

*Aircraft Corp.*, 96 F.R.D. 557 (M.D.Pa. 1982), as supportive of its position, that case bears little relevance to the present dispute. *Whyam* involved a strict liability and negligence action arising out of a plane crash in Scotland. The defendant airplane manufacturer sought to join two Scottish companies who owned and operated the plane. The court granted the defendant's motion on the ground that the absent Scottish companies were active participants that could be partly or entirely liable for plaintiff's damages. *Id.* at 561. In the present case, the parties sought to be joined are third-party indemnitors of Motorola's obligations under the guarantee and are not liable to IMI in any way. The Motorola's indemnitors are not parties indispensable to the resolution of the claim asserted in this case. As such, their absence presents no barrier to IMI's motion for summary judgment.

### F. *Inadequate Discovery*

Finally, IMI argues that insufficient time has been provided to conduct discovery necessary to investigate whether defenses to this action exist. Specifically, Motorola asserts it must depose individuals such as Messrs. Gentili, Ricci, and Cardinali before it can be sure whether defaults under the loan actually occurred and whether IMI's decision to pursue its rights under the guarantee instead of foreclosing on the collateral was made in good faith.

■ A plaintiff's right to discovery before a ruling on a motion for summary judgment is not unlimited and may be denied when the requested discovery is unlikely to produce facts necessary to defeat the motion. *See Colan v. Prudential–Bache Securities, Inc.*, 577 F.Supp. 1074, 1084 (N.D.Ill.1983) (collecting authority). In the present case, Motorola seeks discovery to bolster defenses which have already been dismissed by this court. Regarding the issue of default, Motorola does not seriously dispute that payments under the loan were missed. Rather, Motorola questions whether IMI rigorously pursued Nuova Autovox before exercising its rights under the guarantee. However, as noted

earlier, IMI was not required to pursue Nuova Autovox before exercising its rights under the guarantee. *See, supra,* note 1. Once timely payments under the loan ceased in 1983, IMI was free to demand payment under the guarantee without taking action against Nuova Autovox. Similarly, because IMI was under no duty to resort to assets securing the loan before seeking payment pursuant to the guarantee, IMI's reasons for pursuing Motorola rather than its rights in the collateral are irrelevant. As such, additional discovery is not likely to uncover facts which will support a viable defense to IMI's motion.

### III. CONCLUSION

For the foregoing reasons, plaintiff's motion for summary judgment is granted. Plaintiff is awarded the sum of 2,362,790,-927 Italian lire plus interest accruing subsequent to January 31, 1987.

IT IS SO ORDERED.