## AMERICAN EXPRESS GROUP & INCENTIVE SERVICES, INC v FORHAN

Docket No. 108184. Submitted August 8, 1989, at Lansing. Decided November 21, 1989. Leave to appeal applied for.

William G. Forhan owned Motivation Planners, Inc. (MPI). American Express Company (AMEXCO) sought to acquire MPI. Pursuant to an acquisition agreement, Forhan sold AMEXCO 20,000 of the 25,000 outstanding shares of MPI in exchange for AMEXCO stock. The remaining 5,000 shares of MPI stock were made subject to the terms of a cross-option agreement wherein Forhan and AMEXCO granted each other respective call and put options for the purchase of the shares, with the price for the option shares based on a percentage of MPI's pre-tax income each fiscal year. After the acquisition, MPI's name was changed to American Express Group & Incentive Services, Inc. (AEGIS). MPI and Forhan also entered into an employment agreement wherein Forhan was retained as the company's president and general manager for a period of years. When Forhan thereafter ceased the active performance of his duties as president and general manager, AEGIS filed suit in the Oakland Circuit Court alleging breach of the employment agreement by Forhan. Forhan responded with a countercomplaint against AEGIS and a third-party complaint against AMEXCO, alleging, in part, that AMEXCO had failed to act in a way designed to maximize AEGIS' pre-tax income and thereby breached an implied covenant of good faith and fair dealing implicit in the various agreements. Relying on the applicable New York law, AMEXCO moved for and was granted summary disposition as to the count in Forhan's complaint against AMEXCO alleging breach of implied contractual duties of good faith and fair dealing. All other claims were resolved pursuant to mediation acceptance. Following entry of a final judgment by the trial court, Robert C. Anderson, J., Forhan appealed challenging the summary disposition granted to AMEXCO.

The Court of Appeals *held*:

REFERENCES

Am Jur 2d, Contracts § 256.

See the Index to Annotations under Contracts; Good Faith; Labor and Employment; Restitution and Implied Contracts.

1. The agreements at issue expressly reflect, in clear and unambiguous language, that AMEXCO had no obligation to provide assistance to AEGIS. An implied obligation to provide assistance would be inconsistent with the express terms of the agreement. The applicable New York law will not imply the purported obligations asserted by Forhan. The trial court properly found no genuine issue of material fact in respect to this issue.

2. The provisions of the acquisition agreement and the employment contract are not inconsistent or ambiguous and, therefore, extrinsic evidence is not needed to clarify the alleged ambiguities. The employment contract describes the duties and obligations of Forhan pursuant to his employment with AEGIS and does not describe duties or obligations of AMEXCO to Forhan. The employment contract language does not create duties or obligations on the part of AMEXCO to provide any form of assistance but merely requires Forhan to cooperate and comply with instructions and policies adopted by AMEXCO.

Affirmed.

CONTRACTS — IMPLIED CONTRACTS — GOOD FAITH — FAIR DEALING — NEW YORK LAW.

New York law recognizes an implied contractual duty of good faith and fair dealing, however this duty must relate to obligations implicit in the contract and will not operate to impair rights or privileges expressly provided for, nor will obligations be implied which would be inconsistent with other terms of the contract.

*Miller, Canfield, Paddock & Stone* (by *Gregory L. Curtner* and *Robert A. Shaya*), and *Willkie, Farr & Gallagher* (by *Joseph T. Baio*), of Counsel, for AEGIS and AMEXCO.

*Nora, Hemming, Essad & Polaczyk, P.C.* (by *C. Gerald Hemming* and *Timothy L. Cronin*), for William Forhan.

Before: MURPHY, P.J., and NEFF and G. S. ALLEN,* JJ.

* Former Court of Appeals judge, sitting on the Court of Appeals by assignment.

PER CURIAM. Defendant, William G. Forhan, appeals as of right from a final judgment entered by the circuit court. Forhan challenges a previous order granting partial summary disposition in favor of third-party defendant, American Express Company (AMEXCO). The order Forhan challenges dismissed count III of his countercomplaint which alleged a breach of the implied contractual duties of good faith and fair dealing.

I

Forhan owned and operated a business known as Motivation Planners, Inc. (MPI), which handled group and incentive travelers for large corporations. In 1983, AMEXCO contacted Forhan inquiring whether he was interested in selling the company. Under the acquisition agreement consummated between the parties, Forhan sold AMEXCO 20,000 of the 25,000 outstanding shares of MPI stock in exchange for AMEXCO stock. The remaining 5,000 shares of MPI stock were made subject to the terms of a cross-option agreement wherein Forhan and AMEXCO granted each other respective call and put options for the purchase of the shares. The purchase price for the option shares was to be based on a percentage of MPI's pre-tax income each fiscal year. After the acquisition, MPI's name was changed to American Express Group & Incentive Services, Inc (AEGIS).

An employment agreement was also entered into between MPI and Forhan, wherein Forhan was retained as the company's president and general manager for a period of years. The employment agreement also contained various requirements pertaining to nondisclosure of client lists, trade secrets, and other confidential information as well as a covenant not to compete.

In September, 1986, Forhan ceased the active performance of his duties as president and general manager, but continued as an employee on the payroll. In November, 1986, AEGIS filed suit against Forhan alleging breach of the employment agreement.

Following the entry of a temporary restraining order, Forhan responded with a countercomplaint against AEGIS and a third-party complaint against AMEXCO. Forhan's complaint contained breach of contract counts against both AEGIS and AMEXCO along with a count for intentional interference with contractual relations which purported to apply to both AEGIS and AMEXCO. In April, 1987, the counterclaim was amended such that count III, intentional interference with contractual relations, was replaced with a count alleging breach of implied contractual duties of good faith and fair dealing. Count III, as amended, applied only to AMEXCO.

Following amendment of the complaint, AMEXCO moved for and was granted partial summary disposition pursuant to MCR 2.116(C)(8) and (10) as to count III. All other claims were thereafter resolved pursuant to mediation acceptance. Following entry of a final judgment, Forhan appealed to this Court, challenging the trial court's prior order dismissing count III of his countercomplaint.

II

Forhan contends that summary disposition was improperly granted in favor of AMEXCO. Count III of Forhan's countercomplaint challenged AMEXCO's management and operation of AEGIS in numerous respects and essentially alleged AMEXCO had failed to act in a way designed to maximize AEGIS' pre-tax income. Forhan alleged that AMEXCO's failure

to affirmatively attempt to maximize AEGIS' pre-tax income amounted to a breach of an implied covenant of good faith and fair dealing implicit in the various agreements.

AMEXCO, on the other hand, contends that, although New York law may recognize an implied contractual covenant of good faith and fair dealing, such a covenant cannot be applied in a manner inconsistent with the express terms of a contract. AMEXCO contends that the agreement in this case expressly provided that it had no obligation to provide AEGIS with any assistance or support, financial or otherwise.

Although AMEXCO's motion was brought pursuant to MCR 2.116(C)(8) and (10), the court did not indicate on which ground it was granting the motion. However, because AMEXCO submitted several items of documentary evidence in support of its motion and because Forhan responded with affidavits, deposition transcripts, and documentary evidence of his own, it appears the parties and the trial court treated the motion as if brought pursuant to MCR 2.116(C)(10), and, therefore, we will review this case as if decided on that basis.

New York law, which is applicable here, clearly recognizes an action for breach of an implied contractual covenant of good faith and fair dealing:

> It is a primary rule of contract construction that where the terms of a written agreement are clear and unambiguous, the intent of the parties must be drawn from the contract language . . . . This is so because "it is not the function of the courts to remake the contract agreed to by the parties, but rather to enforce it as it exists[.]" . . . In achieving that end, due regard must be given the overriding principle that every contract contains an implied covenant of good faith performance and fair deal-

ing . . . . Moreover, that a specific promise has not been expressly stated does not always mean that it was not intended. "[T]he undertaking of each promisor in a contract must include any promises which a reasonable person in the position of the promisee would be justified in understanding were included[.]" [*Havel v Kelsey-Hayes Co,* 83 AD2d 380, 382; 445 NYS2d 333, 335 (1981).]

The obligation of good faith and fair dealing is limited, and no obligation can be implied which would be inconsistent with other terms of the contractual relationship. *Murphy v American Home Products Corp,* 58 NY2d 293, 304; 461 NYS2d 232, 237; 448 NE2d 86, 91 (1983). This limitation was recently discussed by an Illinois federal district court in *Istituto Mobiliare Italiano, S p A v Motorola, Inc,* 689 F Supp 812, 815 (ND Ill, 1988). Applying New York law, the court stated:

Although a duty to deal fairly and act in good faith may be implicit in the guarantee, this obligation may not conflict with other terms of the agreement. Where two parties enter an agreement according certain rights and privileges to each, courts will not apply the covenant of good faith and fair dealing to impair such rights.

We conclude from the above cases that, although New York recognizes an implied contractual duty of good faith and fair dealing, this duty must relate to obligations implicit in the contract and will not operate to impair rights or privileges expressly provided for, nor will obligations be implied which would be inconsistent with other terms of the contract.

Here, Forhan's claims that AMEXCO breached implied obligations of good faith and fair dealing were essentially based on AMEXCO's alleged failure to adequately market, develop, or otherwise pro-

vide support and assistance to AEGIS in order to maximize pre-tax income.

The key contractual provision applicable here is § 10.02 of the acquisition agreement, which provides:

> *Financing and Management Assistance; Dividends.* Nothing contained in this Agreement or the Cross Option Agreement or in any document given or delivered in accordance with the terms hereof or thereof shall be deemed to require Buyer or any affiliate of Buyer, and neither Buyer nor any affiliate of Buyer shall have any obligation, to provide any financial assistance or accommodation to MPI, whether by contribution to capital, intercompany advance or otherwise, or to provide any management assistance or other services to MPI, or to direct any business to MPI, nor shall Buyer or any affiliate of Buyer, as the controlling shareholder of MPI, have any obligation whatsoever to cause MPI to declare, nor is it contemplated that MPI will declare, any dividend of any nature on any class of its securities.

Each of the relevant agreements also contains an entire agreement clause as evidenced by § 11.09 of the acquisition agreement, which states in pertinent part:

> *Entire Agreement; Section Headings.* This Agreement, together with the Escrow Agreement, the Employment Agreement and the Cross Option Agreement, constitutes the entire agreement between the parties hereto with respect to the subject matter hereof. No officer, employee or representative of either of the parties has any authority to make any representation or promise not contained in this Agreement or in the Escrow Agreement, the Employment Agreement or the Cross Option Agreement, and neither party has executed this Agreement on reliance of any representation

or promise not contained herein or therein, including, without limitation, any representation or promise as to the admissibility of any oral representation or agreement. There are no restrictions, promises, warranties, covenants or undertakings other than those expressly set forth herein or in the Escrow Agreement, the Employment Agreement and the Cross Option Agreement. No party hereto shall be bound by any communications with respect to the subject matter hereof or thereof unless such communications bear a date subsequent to the date hereof and have been duly and validly executed and delivered by such party in accordance with the provisions of Section 11.03 hereof. All prior agreements, or understandings, if any, between the parties with respect to the subject matter hereof shall, upon the execution of this Agreement, the Escrow Agreement, the Cross Option Agreement and the Employment Agreement, be null and void.

Similar clauses are also contained in § 12.07 of the cross-option agreement and in § 12 of the employment agreement.

Forhan testified in a deposition that he was aware of the express language in § 10.02 which indicated that AMEXCO had no obligation to provide support to AEGIS. Forhan also testified that he was aware that representations not contained within the agreements were not binding.

Our review of the record reveals that the agreements at issue expressly reflect, in clear and unambiguous language, that AMEXCO had no obligation to provide assistance to AEGIS. Moreover, any such implied obligation to provide assistance would be inconsistent with the express terms of the contract. Under these circumstances, New York law will not imply the purported obligations asserted by Forhan. Further, because the contract language is clear and unambiguous and because

Forhan testified he was aware of and understood the contractual terms, we agree with the trial court that there is no genuine issue of material fact with respect to whether AMEXCO was obligated to provide assistance to AEGIS.

III

Despite the express language contained in § 10.02 of the acquisition agreement, Forhan cites the following provisions from the employment agreement and claims that these provisions reflect the existence of an obligation by AMEXCO to direct business to AEGIS:

> (b) Employee shall devote his best efforts and substantially all of his business time exclusively to the performance of his duties and responsibilities hereunder and to the advancement of the interests of the Company. Employee shall cooperate fully with the efforts of TRS to integrate the operations of the Company with those of the travel services division of TRS, and any personnel assigned by such division to work with or at the Company shall receive Employee's full cooperation.
> (c) Employee shall comply with all instructions received from and practices of or policies adopted by Amexco, TRS and their officials and with all instructions received from and practices of or policies adopted by the CEO or President or Board of Directors of MPI. In the absence of specific instructions to the contrary, Employee shall perform his duties in accordance with any then effective annual business plan of the Company.

Forhan also claims that, because these provisions are inconsistent with the disclaiming language of § 10.02 of the acquisition agreement and because the contracts are ambiguous, extrinsic evidence should be admitted to clarify these

ambiguities. We disagree. First, each of the provisions describes the duties and obligations of Forhan pursuant to his employment with AEGIS. These provisions do not describe duties or obligations of AMEXCO to Forhan. Moreover, the language does not create duties or obligations on the part of AMEXCO, as alleged by Forhan, nor is it inconsistent with the disclaiming language contained in § 10.02 of the acquisition agreement. These provisions merely require Forhan to cooperate and comply with instructions and policies adopted by AMEXCO and do not purport to bind AMEXCO to provide any form of assistance.

Affirmed.