OPINION OF THE COURT
Jones, J.
This court has not and does not now recognize a cause of action in tort for abusive or wrongful discharge of an employee; such recognition must await action of the Legislature. Nor does the complaint here state a cause of action for intentional infliction of emotional distress, for prima facie tort, or for breach of contract. These causes of action were, therefore, properly dismissed. Appellant’s cause of action based on his claim of age discrimination, however, should be reinstated. The period of time for commencement of a judicial action for unlawful discrimination in employment is the three-year period of CPLR 214 (subd 2) and "not the one-year period prescribed in subdivision 5 of section 296 of the Executive Law.
Plaintiff, Joseph Murphy, was first employed by defendant, American Home Products Corp., in 1957. He thereafter served in various accounting positions, eventually attaining the office of assistant treasurer, but he never had a formal contract of employment. On April 18,1980, when he was 59 years old, he was discharged.
Plaintiff claims that he was fired for two reasons: because of his disclosure to top management of alleged ac *298 counting improprieties on the part of corporate personnel and because of his age. As to the first ground, plaintiff asserts that his firing was in retaliation for his revelation to officers and directors of defendant corporation that he had uncovered at least $50 million in illegal account manipulations of secret pension reserves which improperly inflated the company’s growth in income and allowed high-ranking officers to reap unwarranted bonuses from a management incentive plan, as well as in retaliation for his own refusal to engage in the alleged accounting improprieties. He contends that the company’s internal regulations required him to make the disclosure that he did. He also alleges that his termination was carried out in a humiliating manner.
As to the second basis for his termination, plaintiff claims that defendant’s top financial officer told him on various occasions that he wished he could fire plaintiff but that, because to do so would be illegal due to plaintiff’s age, he would make sure by confining him to routine work that plaintiff did not advance in the company. Plaintiff also asserts that a contributing factor to his dismissal was that he was over 50 years of age.
On April 14, 1981, plaintiff filed a summons in the present action with the New York County Clerk pursuant to CPLR 203 (subd [b], par 5). The summons described the action as a suit “to recover damages for defendant’s wrongful and malicious termination of plaintiff’s employment”. Another summons and a complaint were served on defendant on June 5, 1981. The complaint set up four causes of action. As his first cause of action, plaintiff alleged that his discharge “was wrongful, malicious and in bad faith” and that defendant was bound “not to dismiss its employees for reasons that are contrary to public policy”. In his second cause of action, plaintiff claimed that his dismissal “was intended to and did cause plaintiff severe mental and emotional distress thereby damaging plaintiff”. His third claim was based on an allegation that the manner of his termination “was deliberately and viciously insulting, was designed to and did embarrass and humiliate plaintiff and was intended to and did cause plaintiff severe mental and emotional distress thereby damaging plaintiff”. In his *299 fourth cause of action, plaintiff asserted that, although his employment contract was of indefinite duration, the law imposes in every employment contract “the requirement that an employer shall deal with each employee fairly and in good faith”. On that predicate he alleged that defendant’s conduct in stalling his advancement and ultimately firing him for his disclosures “breached the terms of its contract requiring good faith and fair dealing toward plaintiff and damaged plaintiff thereby”. Plaintiff demanded compensatory and punitive damages.
Following a stipulation extending defendant’s time to answer or to move with respect to the complaint, defendant moved on July 27, 1981 to dismiss the co'mplaint on the grounds that it failed to state a cause of action and that the fourth cause of action was barred by the Statute of Frauds. Defendant contended that plaintiff was an at-will employee subject to discharge at any time, that New York does not recognize a tort action for abusive or wrongful discharge, and that the prima facie tort and intentional infliction of emotional distress claims were unavailable and insufficient.
On October 16, 1981, plaintiff served an amended complaint with his opposing papers on the motion. The amended complaint, among other things, added a fifth cause of action, alleging that plaintiff was denied advancement due to his age which constituted “illegal employment discrimination on the basis of age in violation of New York Executive Law § 296”.
Special Term denied defendant’s motion to dismiss the wrongful discharge tort claim but granted the motion as to the causes of action for breach of contract, prima facie tort, intentional infliction of emotional distress, and age discrimination. Although the court noted that New York had not yet adopted the doctrine of abusive discharge, it- declined to put plaintiff out of court before he had had opportunity by means of disclosure procedures to elicit evidence which might put his claim on firmer footing. Special Term held the cause of action for breach of contract barred by the Statute of Frauds. As to the second and third causes of action the court ruled that plaintiff’s allegations as to the manner of his dismissal were not sufficient to *300 support causes of action for intentional infliction of emotional distress or for prima facie tort. Finally, applying the one-year period set out in the Executive Law (§ 297, subd 5), Special Term ruled that plaintiff’s age discrimination claim was untimely because the amended complaint was served over a year after his dismissal and could not be related back to the original complaint because “[n]othing in either summons or the first complaint gave notice to the defendant of the age discrimination cause of action” (112 Misc 2d 507, 511).
On cross appeals, the Appellate Division modified, to the extent of granting the motion to dismiss the first cause of action, and otherwise affirmed the order of Special Term. The court noted that it does not appear that New York recognizes a cause of action for abusive discharge and that, in any event, plaintiff had failed to show the type of violation of penal law or public policy that has been held sufficient in other jurisdictions to support a cause of action for abusive discharge. According to the appellate court, plaintiff’s charge that the corporation’s records were not kept in accordance with generally accepted accounting principles appeared to involve a dispute over a matter of judgment as to the proper accounting treatment to be given the terms involved and not a dispute over false book entries. As to the other causes of action, the court ruled that Special Term had properly dismissed them either for failure to state a cause of action, failure to comply with the Statute of Frauds or, regarding the age discrimination claim, failure to assert it within the statutory time period (88 AD2d 870). We modify the order of the Appellate Division from which plaintiff appeals by reinstating the fifth cause of action for age discrimination and otherwise affirm.
With respect to his first cause of action, plaintiff urges that the time has come when the courts of New York should recognize the tort of abusive or wrongful discharge of an at-will employee. To do so would alter our long-settled rule that where an employment is for an indefinite term it is presumed to be a hiring at will which may be freely terminated by either party at any time for any reason or even for no reason (see Martin v New York Life *301 Ins. Co., 148 NY 117; Parker v Borock, 5 NY2d 156). Plaintiff argues that a trend has emerged in the courts of other States to temper what is perceived as the unfairness of the traditional rule by allowing a cause of action in tort to redress abusive discharges. He accurately points out that this tort has elsewhere been recognized to hold employers liable for dismissal of employees in retaliation for employee conduct that is protected by public policy. Thus, the abusive discharge doctrine has been applied to impose liability on employers where employees have been discharged for disclosing illegal activities on the part of their employers (Sheets v Teddy’s Frosted Foods, 179 Conn 471; Palmateer v International Harvester Co., 85 Ill 2d 124; Harless v First Nat. Bank in Fairmont, 246 SE2d 270 [W Va]), where employees have been terminated due to their service on jury duty (Nees v Hocks, 272 Ore 210), and where employees have been dismissed because they have filed workers’ compensation claims (Kelsay v Motorola, Inc., 14: Ill 2d 172; Frampton v Central Ind. Gas Co., 260 Ind 249). Plaintiff would have this court adopt this emerging view. We decline his invitation, being of the opinion that such a significant change in our law is best left to the Legislature.
Those jurisdictions that have modified the traditional at-will rule appear to have been motivated by conclusions that the freedom of contract underpinnings of the rule have become outdated, that individual employees in the modern work force do not have the bargaining power to negotiate security for the jobs on which they have grown to rely, and that the rule yields harsh results for those employees who do not enjoy the benefits of express contractual limitations on the power of dismissal. Whether these conclusions are supportable or whether for other compelling reasons employers should, as a matter of policy, be held liable to at-will employees discharged in circumstances for which no liability has existed at common law, are issues better left to resolution at the hands of the Legislature. In addition to the fundamental question whether such liability should be recognized in New York, of no less practical importance is the definition of its configuration if it is to be recognized.
*302 Both of these aspects of the issue, involving perception and declaration of relevant public policy (the underlying determinative consideration with respect to tort liability in general, see, e.g., Pulka v Edelman, 40 NY2d 781; Prosser, Torts [4th ed], § 3, pp 14-16) are best and more appropriately explored and resolved by the legislative branch of our government. The Legislature has infinitely greater resources and procedural means to discern the public will, to examine the variety of pertinent considerations, to elicit the views of the various segments of the community that would be directly affected and in any event critically interested, and to investigate and anticipate the impact of imposition of such liability. Standards should doubtless be established applicable to the multifarious types of employment and the various circumstances of discharge. If the rule of nonliability for termination of at-will employment is to be tempered, it should be accomplished through a principled statutory scheme, adopted after opportunity for public ventilation, rather than in consequence of judicial resolution of the partisan arguments of individual adversarial litigants.
Additionally, if the rights and obligations under a relationship forged, perhaps some time ago, between employer and employee in reliance on existing legal principles are to be significantly altered, a fitting accommodation of the competing interests to be affected may well dictate that any change should be given prospective effect only, or at least so the Legislature might conclude.
For all the reasons stated, we conclude that recognition in New York State of tort liability for what has become known as abusive or wrongful discharge should await legislative action.[1]
*303 Plaintiff’s second cause of action is framed in terms of a claim for intentional infliction of emotional distress. To survive a motion to dismiss, plaintiff’s allegations must satisfy the rule set out in Restatement of Torts, Second, which we adopted in Fischer v Maloney (43 NY2d 553, 557), that: “One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress” (§ 46, subd [1]). Comment d to that section notes that: “Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community”. The facts alleged by plaintiff regarding the manner of his termination fall far short of this strict standard. Further, in light of our holding above that there is now no cause of action in tort in New York for abusive or wrongful discharge of an at-will employee, plaintiff should not be allowed to evade that conclusion or to subvert the traditional at-will contract rule by casting his cause of action in terms of a tort of intentional infliction of emotional distress (cf. Fischer v Maloney, 43 NY2d 553, 557-558, supra).
Plaintiff’s third cause of action was also properly dismissed. If considered, as plaintiff would have us, as intended to allege a prima facie tort it is deficient inasmuch as there is no allegation that his discharge was without economic or social justification (Morrison v National Broadcasting Co., 24 AD2d 284, 287, revd on other grounds 19 NY2d 453; see Drago v Buonagurio, 46 NY2d 778, 779). Moreover, we held in James v Board of Educ. (37 NY2d 891, 892), which also involved the exercise of an unrestricted right to discharge an employee, that: “Plaintiff cannot, by the device of an allegation that the sole reason for the termination of his employment by these public officials acting within the ambit of their authority was to harm him without justification (a contention which could be advanced with respect to almost any such termi *304 nation), bootstrap himself around a motion addressed to the pleadings”. Nor does the conclusory allegation of malice by plaintiff here supply the deficiency. As with the intentional infliction of emotional distress claim, this cause of action cannot be allowed in circumvention of the unavailability of a tort claim for wrongful discharge or the contract rule against liability for discharge of an at-will employee.
Plaintiff’s fourth cause of action is for breach of contract. Although he concedes in his complaint that his employment contract was of indefinite duration (inferentially recognizing that, were there no more, under traditional principles his employer might have discharged him at any time), he asserts that in all employment contracts the law implies an obligation on the part of the employer to deal with his employees fairly and in good faith and that a discharge in violation of that implied obligation exposes the employer to liability for breach of contract. Seeking then to apply this proposition to the present case, plaintiff argues in substance that he was required by the terms of his employment to disclose accounting improprieties and that defendant’s discharge of him for having done so constituted a failure by the employer to act in good faith and thus a breach of the contract of employment.
No New York case upholding any such broad proposition is cited to us by plaintiff (or identified by our dissenting colleague), and we know of none. New York does recognize that in appropriate circumstances an obligation of good faith and fair dealing on the part of a party to a contract may be implied and, if implied will be enforced (e.g., Wood v Duff-Gordon, 222 NY 88; Pernet v Peabody Eng. Corp., 20 AD2d 781). In such instances the implied obligation is in aid and furtherance of other terms of the agreement of the parties. No obligation can be implied, however, which would be inconsistent with other terms of the contractual relationship. Thus, in the case now before us, plaintiff’s employment was at will, a relationship in which the law accords the employer an unfettered right to terminate the employment at any time. In the context of such an employment it would be incongruous to say that an *305 inference may be drawn that the employer impliedly agreed to a provision which would be destructive of his right of termination. The parties may by express agreement limit or restrict the employer’s right of discharge, but to imply such a limitation from the existence of an unrestricted right would be internally inconsistent. In sum, under New York law as it now stands, absent a constitutionally impermissible purpose, a statutory proscription, or an express limitation in the individual contract of employment, an employer’s right at any time to terminate an employment at will remains unimpaired.
Of course, if there were an express limitation on the employer’s right of discharge it would be given effect even though the employment contract was of indefinite duration. Thus, in Weiner v McGraw-Hill, Inc. (57 NY2d 458), cited by plaintiff, we recently held that, on an appropriate evidentiary showing, a limitation on the employer’s right to terminate an employment of indefinite duration might be imported from an express provision therefor found in the employer’s handbook on personnel policies and procedures. Plaintiff’s attempts on this appeal to bring himself within the beneficial scope of that holding must fail, however. There is here no evidence of any such express limitation. Although general references are to be found in his brief in our court to an employer’s “manual”, no citation is furnished to any provision therein pertinent to the employer’s right to terminate his employment, and the alleged manual was not submitted with his affidavit in opposition to the motion to dismiss his complaint.
Accordingly, the fourth cause of action should have been dismissed for failure to state a cause of action.[2]
*306 As to his fifth cause of action for age discrimination, plaintiff correctly contends that in dismissing this cause of action as barred by the Statute of Limitations the courts below applied the wrong statute. They invoked the one-year period prescribed in subdivision 5 of section 297 of the Executive Law: “Any complaint filed pursuant to this section must be * * * filed within one year after the alleged unlawful discriminatory practice”. The Legislature clearly intended this restriction to apply to complaints of discrimination filed with the Division of Human Rights under subdivision 1 of section 297 of the Executive Law. The issue presented in this case is whether it was intended that the one-year period should also apply to civil actions brought under subdivision 9 of section 297.[3]
Initially it is to be observed that a civil action is. not instituted by the “filing of a complaint”. Rather a civil action is commenced by service, delivery, or filing of a summons (or in some instances by an order for a provisional remedy) (CPLR 203, subd [b]). More significant, there are persuasive reasons why provision should be made for different periods of time within which claims for unlawful discrimination may be made — one for administra *307 tive relief, the other for judicial remedy. The procedures, practices, and remedies, indeed the entire perspective of administrative intervention under the Human Rights Law, differ radically from the traditional course of judicial adjudication. Moreover, in this instance, subdivision 9 expressly provides that where the division, on the grounds of administrative convenience, dismisses a complaint filed with it, the complainant may then bring a civil suit. This possibility suggests the practical desirability if not necessity of staggered periods of limitation, with a longer period fixed for the commencement of civil actions. (Relief in the reverse order is not permitted; initiation of a civil action forecloses all recourse to the Division of Human Rights [§ 297, subd 9].) We conclude, therefore, that the one-year period of subdivision 5 was intended to apply only to the filing of complaints with the Division of Human Rights.
In enacting subdivision 9 of section 297, the Legislature created a new cause of action not previously cognizable, but, in doing so, provided no specific period of limitations for such action. Consequently the institution of civil actions to recover damages for unlawful discriminatory practices under subdivision 9 is governed by the three-year period of limitations prescribed in CPLR 214 (subd 2) applicáble to “an action to recover upon a liability, penalty or forfeiture created or imposed by statute” (emphasis added; contrast State of New York v Cortelle Corp., 38 NY2d 83, 86 [holding that statutory provisions did not create “new claims but only provide particular remedies and standing in a public officer”]). It was, therefore, error to dismiss plaintiff’s cause of action for age discrimination as barred by the one-year period prescribed in subdivision 5 of section 297.
For the reasons stated, the order of the Appellate Division should be modified, with costs, to reinstate plaintiff’s fifth cause of action for age discrimination.

. Employees in New York have already been afforded express statutory protection from firing for engaging in certain protected activities (e.g., Judiciary Law, § 519 [prohibiting discharge of employee due to absence from employment for jury service]; Executive Law, § 296, subd 1, par [e] [barring discharge of employees for opposing unlawful discriminatory practices or for filing a complaint or participating in a proceeding under the Human Rights Law]; Labor Law, § 215 [proscribing discharge of employee for making a complaint about a violation of the Labor Law or for participating in a proceeding related to the Labor Law]).
In fact, legislation has been proposed but not adopted which would protect employees who have been terminated for taking actions which benefit the general public or society in general (e.g., 1981 NY Assembly Bill A 2566), for disclosure of violations of law or *303 regulation which pose a substantial and impending danger to public health or safety (e.g., 1982 NY Senate-Assembly Bill S 9566, A 12451), or for disclosure of certain illegal or hazardous activities of their employers (e.g., 1983 NY Senate Bill S 1153).

. [4] Both courts below dismissed this cause of action under the Statute of Frauds. This appears to have been error, inasmuch as the contract of employment was not one which by its terms could not have been performed within one year (General Obligations Law, § 5-701, subd a, par 1) and does not otherwise come within the reach of the Statute of Frauds (Weiner v McGraw-Hill, Inc., 57 NY2d 458, 463).
We reject the view of the dissenter that a good faith limitation should now be judicially engrafted on what in New York has been the unfettered right of termination lying at the core of an employment at will (Weiner v McGraw-Hill, Inc., 57 NY2d 458,467 [dissenting opn]). We do so for precisely the reasons which persuade him as well as the other *306 members of the court that we should now refrain from judicial recognition of the tort action for abusive discharge. As the dissenter is at pains to note, there has been much criticism of the traditional conception of the legal obligations and rights which attach to an employment at will. It may well be that in the light of modern economic and social considerations radical changes should be made. As all of us recognize, however, resolution of the critical issues turns on identification and balancing of fundamental components of public policy. Recognition of an implied-in-law obligation of good faith as restricting the employer’s right to terminate is as much a part of this matrix as is recognition of the tort action for abusive discharge. We are of the view that this aggregate of rights and obligations should not be approached piecemeal but should be considered in its totality and then resolved by the Legislature (see at pp 301-302, supra).

. Subdivision 9 provides “Any person claiming to be aggrieved by an unlawful discriminatory practice shall have a cause of action in any court of appropriate jurisdiction for damages and such other remedies as may be appropriate, unless such person had filed a complaint hereunder or with any local commission on human rights, or with the superintendent pursuant to the provisions of section two hundred ninety-six-a of this chapter, provided that, where the division has dismissed such complaint on the grounds of administrative convenience, such person shall maintain all rights to bring suit as if no complaint had been filed. No person who has initiated any action in a court of competent jurisdiction or who has an action pending before any administrative agency under any other law of the state based upon an act which would be an unlawful discriminatory practice under this article, may file a complaint with respect to the same grievance under this section or' under section two hundred ninety-six-a.”