Howard GMORA, et al., Plaintiffs,

v.

**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Defendant.**

No. CV 88–1970.

United States District Court, E.D. New York.

April 3, 1989.

Alan E. Wolin, Hicksville, N.Y., for plaintiffs.

---

Meyer, Suozzi, Englien & Klein by David W. Hanis, Mineola, N.Y., for defendant.

## MEMORANDUM AND ORDER

WEXLER, District Judge.

Plaintiffs, former employees of defendant State Farm Mutual Automobile Insurance Company ("State Farm"), bring this breach of contract lawsuit alleging that they were wrongfully terminated from their positions as claims estimators. The lawsuit was originally commenced in the Supreme Court of the State of New York and was timely removed, on the ground of diversity of citizenship, to this Court.

Presently before the Court are defendant's motion for summary judgment and plaintiffs' motion to review a discovery-related order of the Honorable David F. Jordan, United States Magistrate. For the reasons that follow, defendant's motion for summary judgment is granted. The appeal from the order of the Magistrate's ruling is, accordingly, rendered moot.

## I. Background

As noted above, each plaintiff was formerly employed as a claims estimator for defendant State Farm. In their capacities as claims estimators, plaintiffs were responsible for examining damaged automobiles and issuing written estimates of the cost of returning the vehicles to their pre-accident condition. Between the months of July and September 1987 State Farm terminated each plaintiff's employment. The terminations followed an internal insurance fraud investigation that was apparently prompted by a State investigation into alleged fraud in the insurance industry.

In the papers presently before the Court the parties hotly contest the issue of whether plaintiffs were actually found to have engaged in fraudulent or dishonest behavior prior to their terminations. For the purpose of the present motion, however, the precise reason why plaintiffs were terminated need not be resolved. Instead, the question presently before the Court is whether plaintiffs have alleged sufficient facts under the law of the State of New York, to allow their breach of contract claims to be presented to a jury.

## II. Discussion

### a. General Principles

The present motion for summary judgment can be granted only if "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56, *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Donahue v. Windsor Locks Bd. of Fire Commissioners*, 834 F.2d 54, 57 (2d Cir. 1987). The burden is on the moving party to clearly establish the absence of a genuine issue as to any material fact, and the Court must resolve all ambiguities and draw all reasonable inferences in favor of the non-moving party. *Donahue*, 834 F.2d at 57. Since the presence of only a genuine and material issue of fact precludes the entry of summary judgment, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986), the summary judgment procedure allows the Court to determine whether a trial is necessary and to dispose of a claim that is meritless. Summary judgment must, however, be "used selectively to avoid trial by affidavit." *Donahue*, 834 F.2d at 57.

### b. Stating a Claim For Wrongful Termination

Under the law of the State of New York, where an individual is employed for an indefinite period of time, the employment is deemed to be at-will and can be terminated at any time by either party. *Sabetay v. Sterling Drug, Inc.*, 69 N.Y.2d 329, 514 N.Y.S.2d 209, 211, 506 N.E.2d 919, 920–21 (1987); *Murphy v. American Home Prods. Corp.*, 58 N.Y.2d 293, 461 N.Y.S.2d 232, 237, 448 N.E.2d 86, 91 (1983). The circumstances under which an employer may not exercise an unfettered right to terminate an at-will employee are narrowly drawn. Specifically, it has been held that "absent a constitutionally impermissible purpose, a statutory proscription, or an express limitation in the individual contract of employment, an employer's right at any time to

terminate an employment at will remains unimpaired." *Murphy,* 461 N.Y.S.2d at 237, 448 N.E.2d at 91. At issue in this case is the last-mentioned limitation on the employer's right to terminate employees—an express limitation in the individual contract of employment.

Express limitations on the employer's right of termination are not limited to those found in a single document entitled "contract of employment." Instead, the New York Court of Appeals has found the existence of a contractual right to continued employment in an ancillary document such as an employment application. *See Weiner v. McGraw–Hill, Inc.,* 57 N.Y.2d 458, 457 N.Y.S.2d 193, 197, 443 N.E.2d 441, 445 (1982); *see also Gorrill v. Icelandair/Flugleidir,* 761 F.2d 847, 852–53 (2d Cir.1985) (right to continued employment found in "Operations Manual"). In such cases the finding of the contractual right is typically based upon the language of documents as well as the actions of the employee. *See, e.g., Weiner,* 457 N.Y.S.2d at 197, 443 N.E. 2d at 445.

New York courts have been reluctant, in the absence of clear evidence, to find the existence of an express contractual right based upon language found in documents distributed to employees. *See, e.g., Collins v. Hoselton Datsun,* 120 A.D.2d 952, 503 N.Y.S.2d 203, 204 (4th Dep't 1986); *Patrowich v. Chemical Bank,* 98 A.D.2d 318, 470 N.Y.S.2d 599, 603 (1st Dep't 1984). The rulings in these courts have no doubt been due primarily to application of the State's highest court's recognition of the policy that significant changes in employment relationships is best left to the State's Legislature. *See Sabetay,* 514 N.Y.S.2d at 213, 506 N.E.2d at 922–23; *Murphy,* 461 N.Y.S. 2d at 235–236, 448 N.E.2d at 89–90.

### c. *The Present Motion*

Plaintiffs here allege the breach of an express contractual right to continued employment. Specifically, plaintiffs claim that a variety of documents establishes plaintiffs' claims to job security and termination for good cause only. Plaintiffs further argue that State Farm breached its contractual obligations to plaintiffs by failing to follow certain "safeguards and procedures" that were to be followed prior to any dismissal. Finally, plaintiffs argue that State Farm violated its implied obligations of good faith and fair dealing.

In support of their claims plaintiffs rely on passages excerpted from eight separate documents. Those documents are: (1) the State Farm Employees Benefit Package (the "Benefits Package"); (2) the Personnel Policies Manual (the "Personnel Manual"); (3) a document entitled "State Farm and You"; (4) the "Claims Superintendent's Manual"; (5) a document discussing exit interviewing; (6) a memorandum dated March 13, 1986 regarding "Reissue of Employment Philosophy and Policy Statement" (the "March 13 Memo"); (7) a memorandum entitled "What is a Good Estimate" (the "Estimate Memorandum") and (8) the Personnel Manager Guide (the "Personnel Guide").

When assessing whether the above-referenced documents are sufficient to allow plaintiffs' breach of contract claims to be presented to a jury the Court is guided by the leading case of *Weiner v. McGraw–Hill, Inc.,* 57 N.Y.2d 458, 457 N.Y.S.2d 193, 443 N.E.2d 441 (1982) as well as subsequent cases from New York's highest court that have interpreted *Weiner.*

In *Weiner,* the New York Court of Appeals found that plaintiff made a sufficient evidentiary showing from which a jury could infer the existence of an express contractual limit on the employer's right to terminate Weiner, the employee. In support of its finding the Court noted four compelling factors. Specifically, the Court noted: (1) that Weiner was induced to leave his former place of employment by the assurance that McGraw–Hill would not fire him; (2) that the assurance of continued employment was incorporated into Weiner's employment application; (3) that Weiner rejected other offers of employment in reliance on McGraw–Hill's assurances of continued employment and (4) that when Weiner had occasion to dismiss his subordinates he was instructed to proceed in strict compliance with McGraw–Hill's handbook and policy manuals because employ-

ees could be discharged for just cause only. *Weiner*, 457 N.Y.S.2d at 197, 443 N.E.2d at 445. Taking all of these facts into account the Court of Appeals concluded that a jury could infer that McGraw–Hill was bound to a promise not to discharge Weiner without just and sufficient cause and an opportunity for rehabilitation. *Id.*

Shortly after deciding *Weiner*, the New York Court of Appeals decided *Murphy v. American Home Prods. Corp.*, 58 N.Y.2d 293, 461 N.Y.S.2d 232, 448 N.E.2d 86 (1983). There, the Court found that plaintiff made an insufficient showing of the existence of an express contractual right to continued employment. *Murphy*, 461 N.Y.S.2d at 237, 448 N.E.2d at 91. In recognition of the aforementioned policy against judicial intervention in employment relationships, the Court refused to recognize the existence in New York of a common-law tort theory of liability for abusive or wrongful discharge. Finally, the Court refused to recognize a cause of action based upon the alleged breach of an implied covenant of good faith in all employment contracts. *Id.* As a consequence of these rulings, the Court dismissed Murphy's claim.

The most recent pronouncement of New York's highest court on the issue of termination of at-will employees is found in *Sabetay v. Sterling Drug, Inc.*, 69 N.Y.2d 329, 514 N.Y.S.2d 209, 506 N.E.2d 919 (1987). There, the Court characterized *Weiner* as imposing an "explicit and difficult pleading burden" and noted that, in light of this burden, plaintiffs alleging wrongful discharge "have not fared well" in New York's lower courts. *Sabetay*, 514 N.Y.S.2d at 212, 506 N.E.2d at 922. The Court also discussed the facts in *Murphy* and stated that the documents relied on there were insufficient because Murphy cited no provision discussing the right of termination that could be characterized as an "explicit restriction" on the employer's right to terminate. *Id.* at 213, 506 N.E.2d at 922–23.

Turning to the documents Sabetay relied on, the Court held that such documents did not rise to the express agreement alleged.

Instead, the Court held that the documents "merely suggest standards set by Sterling Drug for its employees' performance of their duties that, without more, [could not] be actionable." *Id.* Adhering to the view that changes in employment relationships are a proper subject for legislative, rather than judicial action, the Court declined to relax the *Weiner* requirements to allow Sabetay's claim. *Id.*

The Court's review of the above-referenced cases reveals that the mere allegation of the right to continued employment is insufficient to allow a terminated employee to present his case to a jury. Instead, the plaintiff must sustain an "explicit and difficult pleading burden" to avoid the entry of judgment in the employer's favor. *Sabetay*, 514 N.Y.S.2d at 212, 506 N.E.2d at 922; *see Wright v. Cayan*, 817 F.2d 999, 1004 (2d Cir.1987).

Cases allowing plaintiffs to go forward have relied on clear language showing the existence of a contractual right. In addition, those cases have relied upon words and deeds of the employer that are consistent with the alleged right. As noted above, in *Weiner*, an express assurance to continued employment was written in Weiner's employment application. In addition, express oral representations of continued employment were communicated to Weiner by his employer. A similar express contractual right was found in *Gorrill v. Icelandair/Flugleidir*, 761 F.2d 847 (2d Cir.1985). There, the documents relied upon stated specifically that seniority was to be the "sole factor" to be considered when making termination decisions. *Gorrill*, 761 F.2d at 850.

In light of the standards referred to above, the Court holds that plaintiffs' evidentiary showing falls far short of that necessary to present their breach of contract claims to the trier of fact. In so holding this Court agrees that plaintiffs need not show the existence of the exact four factors present in *Weiner*. Instead, this Court holds that the totality of the facts and circumstances in each case must be considered when determining whether a plaintiff makes a sufficient showing. *Ac-*

*cord Gorrill,* 761 F.2d at 853. Nevertheless, plaintiffs have not sustained their pleading burden.

The documents plaintiffs rely on speak of general corporate goals. Thus, both the Benefits Package and "State Farm and You" state that "[i]t is State Farm's objective to counsel employees who fail to meet performance standards, rather than resorting to immediate dismissal. The Benefits Package states that State Farm's goal is "employee improvement, not employee dismissal," and the Personnel Manual states that under "general policy [State Farm] makes every reasonable effort to facilitate continued employment."

In addition to stating these goals the proferred documents refer to the procedures State Farm follows when employees are suspected of misconduct. Certain broadly enumerated offenses such as "fraud" or "dishonesty" are deemed "serious" and are stated to result in immediate dismissal or a company initiated leave of absence pending a factual investigation.

The final group of documents relied upon refer to the training of claims estimators and reiterate, in general terms, the general policies referred to above. Thus, the Claims Superintendent's Manual instructs those in charge of reinspecting estimates to locate problems and determine the best method of educating and training the estimator. Similarly, the Estimate Memorandum explains the reinspection program and states that the program is designed to help estimators become better at what they do. Finally, the March 13 Memo and the Personnel Guide echo the general rehabilitative goals referred to above by stating that State Farm's policies are to be carried out in a "fair and equitable manner" and by reiterating the general goal that State Farm's objective is "employee improvement" not "employee discharge."

The documents relied upon reflect a general corporate policy of rehabilitation rather than dismissal, and, in addition, state the procedures to be followed when certain enumerated conditions are found. The documents are devoid, however, of any reference to an express limitation on the employer's right to terminate employees. In the absence of any reference to State Farm's right of termination this Court cannot find any restriction of that right. *See Sabetay,* 514 N.Y.S.2d at 213, 506 N.E.2d at 922-23.

While it is true that certain discharge procedures are referred to, these documents can in no way be construed to place limits on the employer's policies. The mere reference to certain grounds for termination does not translate into a finding that employees will be terminated for good cause only or in any way set forth an *express* limitation on State Farm's right to terminate its at-will employees. *Sabetay,* 514 N.Y.S.2d at 213, 506 N.E.2d at 922-23 (documents that merely suggest standards of conduct are not, without more, actionable). Under these circumstances, the Court cannot find that plaintiffs have met the explicit pleading burden set forth in *Weiner.* Since plaintiffs have not shown the existence of express contractual rights they may not recover pursuant to their breach of contract claims.

In view of the foregoing the Court need not determine whether plaintiffs actually relied upon the documents cited in support of their claims. While a finding that plaintiffs did not rely on the documents might be fatal to their claims, *see Leahy v. Federal Express Corp.,* 609 F.Supp. 668, 672 (E.D.N.Y.1985); *Rizzo v. International Brotherhood of Teamsters,* 109 A.D.2d 639, 486 N.Y.S.2d 220, 221 (1st Dep't 1985), such reliance is immaterial where the documents cannot be construed to place an express limit on the employer's termination rights.

■ Finally, the Court rejects plaintiffs' claim that State Farm breached its duties of good faith and fair dealing. Where, as here, the Court has rejected a claim based upon breach of an express contract, a claim for breach of implied obligations will not lie. *Murphy,* 461 N.Y.S.2d at 237, 448 N.E.2d at 91; *see also Sabetay,* 514 N.Y.S.2d at 212, 506 N.E.2d at 922.

## CONCLUSION

The Court holds that plaintiffs have not alleged facts sufficient to allow a jury to

consider their breach of contract claims. Accordingly, defendant's motion for summary judgment is granted. The appeal from the discovery ruling of Magistrate Jordan is denied as moot.

SO ORDERED.