Douglas R. TOWNSEND, Plaintiff,

v.

## HARRISON RADIATOR DIVISION, GENERAL MOTORS CORPORATION, Defendant.

### No. CIV–89–499S.

United States District Court, W.D. New York.

April 11, 1991.

Roger Niemel, Niemel and Niemel, North Tonawanda, N.Y., for plaintiff.

Michael Moravec, Phillips Lytle Hitchcock & Blaine, Buffalo, N.Y., for defendant.

## DECISION AND ORDER

SKRETNY, District Judge.

## INTRODUCTION

Before this Court is defendant's motion for summary judgment pursuant to Fed.R. Civ.P. 56.

Plaintiff Douglas R. Townsend ("Townsend") sues defendant Harrison Radiator Division, General Motors Corporation ("Harrison") for Harrison's breach of an implied employment contract. Although Townsend initiated this lawsuit in state court, on May 1, 1989, defendant removed this lawsuit to this Court. This Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332 and, therefore, New York law supplies the substantive rule of decision in this case.

In his Complaint, Townsend alleges that portions of Harrison's personnel policies and procedures handbook, "Working With GM," created an implied employment contract between Townsend and Harrison. Townsend alleges that Harrison breached this contract by discharging him. Although Harrison contends that Townsend's discharge resulted from falsification of time reports, Townsend insists that he engaged in no misconduct and emphasizes that a New York State administrative law judge, subsequently affirmed by the New York State Department of Labor, found no credible evidence of misconduct.

Harrison moves for summary judgment, arguing that Townsend was an employee at will and under New York common law subject to discharge for any reason. Furthermore, Harrison contends, no implied employment contract existed between Harrison and Townsend limiting Harrison's right to discharge Townsend at will. Finally, notwithstanding its right to discharge Townsend at will, Harrison claims that Townsend's discharge resulted after an internal investigation revealed that Townsend had falsified time reports.

In support of its motion, Harrison submits its Notice of Motion with exhibits ("H. Notice"); the affidavit of James Hamilton, a manager with Harrison's Salaried Personnel Administration ("Hamilton"); a legal memorandum ("H. Memo"); a reply memorandum ("H. Reply"); a supplemental memorandum ("Supp. Memo"); and a statement of material facts not in dispute ("H. Fact").

In opposition to Harrison's motion, Townsend submits a statement of undisputed material facts ("T. Fact"); a supplemental statement of disputed material facts ("T. Supp. Fact"); the affidavit of Douglas R. Townsend ("Townsend"); and the affidavit of Roger Niemel, Esq. ("Niemel").

*Conclusion:* For the reasons set forth below, this Court grants Harrison's motion for summary judgment and dismisses Townsend's lawsuit.

## FACTS

The following material facts are not in dispute.

In 1964, Townsend commenced employment with Harrison. From 1964 until approximately 1975, when Harrison became an inspection foreman, a collective bargaining agreement governed Townsend's employment. (T. Fact, ¶ 1).

In 1975–76, Harrison promoted Townsend to inspection foreman, a supervisory level position. As an inspection foreman, Townsend did not have an express employment contract and the collective bargaining agreement no longer provided terms and conditions of Townsend's employment. Upon his promotion, Townsend received Harrison's personnel policies and procedures handbook "Working With GM" ("the Handbook") (Townsend, ¶¶ 2–3).

On each of the days from March 17 through March 20, 1986, Harrison security guards observed Townsend leaving the plant before the time Townsend indicated on his time reports for those days. These security guards did not see Townsend return. However, several other plant personnel, including one other security guard, saw Townsend in the plant after Townsend allegedly left for the day. (Complaint, Exhs. A & B; T. Fact, ¶ 6).

Effective March 25, 1986, Harrison discharged Townsend for falsification of time reports for the week ending March 23, 1986. Harrison officials personally escorted Townsend from the plant in full view of other plant employees, including some whom Townsend supervised. (Townsend, ¶ 16).

Shortly after his discharge, Townsend filed for unemployment benefits with the New York State Department of Labor. On April 23, 1986, a New York State Department of Labor Claims Examiner denied Townsend unemployment benefits on the grounds that falsification of time reports constituted misconduct and disqualified Townsend from receiving such benefits. (Complaint, Exh. A).

On April 30, 1986, Townsend's attorney contacted Harrison by letter seeking reinstatement for Townsend. On May 27, 1986, Harrison, by letter, informed Townsend's attorney that Harrison would "... initiate the procedure for using the Open Door Policy," and that Townsend could "... expect a prompt and thorough review of his concerns." (H. Notice, Exh. C).

On September 8, 1986, after a hearing at which Townsend, represented by counsel, and other witnesses on behalf of Townsend and Harrison testified, an Administrative Law Judge ("ALJ") reversed the unemployment benefits claim denial. The ALJ concluded that Townsend committed no misconduct finding that "... credible evidence adduced at the hearing established that [Townsend] did not leave work on the dates in question but merely went to his vehicle and immediately returned to his work." (Complaint, Exh. A). On February 10, 1987, the New York State Department of Labor Unemployment Insurance Appeal Review Board upheld the ALJ's ruling. (Complaint, Exh. B).

On August 29, 1988, Harrison completed the Open Door Policy with respect to Townsend. At all levels of review Harrison sustained Townsend's discharge. (Hamilton, ¶ 6, D. Fact, ¶ 2).[1] As a result, General Motors' corporate headquarters notified Townsend by letter of its decision to "...support the action taken by management of Harrison Radiator Division." (H. Notice, Exh. J.)

### SUMMARY JUDGMENT

Federal Rule of Civil Procedure 56(c) provides that summary judgment is appropriate where it is shown that "... there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The burden is upon the moving party to demonstrate the absence of a material factual dispute. Fed. R.Civ.P. 56(e). Once that burden is met, the non-moving party "... must set forth

---

1. In March and April, 1986 Harrison conducted an internal investigation by interviewing employees Townsend claimed could verify his presence on the premises during the disputed times. This investigation resulted in Townsend's discharge *effective* March 25, 1986. (Hamilton, ¶ 4). However, Townsend claims that Harrison never interviewed witnesses whom according to Townsend could establish that he was innocent of falsifying time reports. (Townsend, ¶ 7).

specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). This Court must draw all reasonable inferences in favor of the non-moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59, 90 S.Ct. 1598, 1608–09, 26 L.Ed.2d 142 (1970). However, courts should not be reluctant to grant summary judgment in appropriate cases since "... one of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims," *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986), thereby permitting courts to avoid "... protracted, expensive and harassing trials." *Meiri v. Dacon*, 759 F.2d 989, 998 (2d Cir.1985), *cert. denied*, 474 U.S. 829, 106 S.Ct. 91, 88 L.Ed.2d 74 (1985).

With this standard in mind, this Court now addresses the substantive legal issues in this case.

## DISCUSSION

A. *The New York Employment At Will Rule*

■ New York law unequivocally dictates that, absent an express agreement establishing that employment is to be for a fixed duration, an employment relationship is presumed to be a hiring at will, "... which may be freely terminated by either party at any time for any reason or even for no reason." *Murphy v. American Home Products Corp.*, 58 N.Y.2d 293, 300–01, 461 N.Y.S.2d 232, 235, 448 N.E.2d 86, 89 (1983) (citations omitted). New York courts have narrowly construed limits on an employer's right to discharge an at will employee for any reason; "... absent a constitutionally impermissible purpose, a statutory proscription, or an express limitation in the individual contract of employment, an employer's right at any time to terminate an employment at will remains unimpaired." *Id.*, 58 N.Y.2d at 305, 461 N.Y.S.2d at 237, 448 N.E.2d at 91.

An often litigated limitation on an employer's right to discharge an at will employee, which gained prominence in *Weiner v. McGraw-Hill*, 57 N.Y.2d 458, 457 N.Y. S.2d 193, 443 N.E.2d 441 (1982), and which

is at issue in this case, continues to be an express contractual limitation proscribing the employer's unfettered right to discharge for any reason.

In *Weiner*, reversing the dismissal below, the Court held that an employee stated a cause of action for wrongful discharge predicated on an alleged breach of an express employment contract. The Court concluded that language in an employment handbook combined with reference to the handbook in an employment application constituted sufficient evidence of an express contract limiting the employer's otherwise "unfettered right" to discharge the employee. The Court identified four factors, alleged by the employee, from which a jury could infer the existence of an express contractual limit on the employer's right to discharge. First, the employee alleged that the employer induced the employee to leave his former employer by assurances of job security. Second, the employee alleged that these assurances were incorporated into an employment contract, application or other document. Third, the employee alleged that he rejected other offers of employment in reliance on these assurances. And fourth, the employee alleged that the employer informed him that he could be discharged only for cause. *Id.*, 57 N.Y.2d at 465–66, 457 N.Y. S.2d at 197, 443 N.E.2d at 445.

These are not the only factors indicating the existence of an express limitation on an employer's right to discharge an otherwise at will employee; federal courts in this Circuit have weighed the totality of the circumstances to determine the existence of an express contractual right limiting the employer's right to discharge under New York Law. *See, Gmora v. State Farm Mutual Automobile Insurance Company*, 709 F.Supp. 337, 340 (E.D.N.Y.1989) *aff'd*, 888 F.2d 1376 (2d Cir.1989); *Gorrill v. Icelandair/Flugleidir*, 761 F.2d 847, 853 (2d Cir.1985).

However, since *Weiner*, to avoid entry of judgment for the employer, the New York Court of Appeals has demanded that an employee sustain an "... explicit and difficult pleading burden," *Sabetay v. Sterling Drug, Inc.*, 69 N.Y.2d 329, 334–335, 514 N.Y.S.2d 209, 212, 506 N.E.2d 919, 922

(1987), by showing the existence of an express contractual limitation on an employer's right to discharge an employee at will. *Murphy,* 58 N.Y.2d 293, 305, 461 N.Y.S.2d 232, 237, 448 N.E.2d 86, 91 (1983).

In *Murphy,* holding that a discharged employee failed to show that his employment manual established an express limitation on the employer's right to discharge at will, the Court rejected the employee's attempt to fit his wrongful discharge action within the beneficial umbrella of *Weiner.* Although the employee cited "general references" to the manual which allegedly created the limitation on the employer's right to discharge at will, the Court found no provision in the manual "... pertinent to the employer's right to terminate his employment...." *Id.,* 58 N.Y.2d at 305, 461 N.Y.S.2d at 237–38, 448 N.E.2d at 91.

Similarly, in *Sabetay,* affirming dismissal of an employee's wrongful discharge claim, the Court found that the employee "... failed to demonstrate a limitation by express agreement on his employer's unfettered right to terminate at will...." In that case, plaintiff alleged the express limitation arose from his employer's personnel policy manual and by various written accounting policies governing plaintiff's employment. The Court found that the employer designed the personnel manual "... solely for the purpose of determining post-termination benefits," and that the written policies "... merely suggest[ed] standards ..." set by the employer "... for its employees' performance of their duties...." *Sabetay,* 69 N.Y.2d at 336, 514 N.Y.S.2d at 213, 506 N.E.2d at 923.

Therefore, unless this Court finds sufficient evidence of an express contractual right limiting Harrison's otherwise unfettered right to discharge Townsend, this Court must grant Harrison summary judgment.

### B. *Express Limit On Harrison's Right To Discharge Townsend*

Townsend admits his employment relationship with Harrison was at will, thus terminable "... for a variety of reasons, including the color of his hair...." (Town-

send, ¶ 5). In his Complaint Townsend alleges, however, that an implied contract with Harrison limits Harrison's right to discharge him for any reason. That limitation, Townsend contends, stems from various statements and a portion contained in Harrison's Handbook.

As Exhibit C to the Complaint, Townsend attaches those portions of the Handbook which allegedly constitute an implied limitation on Harrison's right to discharge him.

Specifically, Townsend offers the following three statements and one portion contained in the Handbook which allegedly limit Harrison's right to discharge Townsend. First, Townsend offers the statement that Harrison would treat employees with "... dignity and respect ..." as one of three "... overall employee relations objectives." Townsend contends that Harrison denied him this treatment because he was "... totally humiliated and embarrassed by being escorted out of the Plant ..." upon his discharge (Townsend, ¶ 16). Second, Townsend offers the statement that Harrison provides its employees "... an opportunity for a long-range career and job security." Third, Townsend offers the statement that Harrison employees are entitled to "Protection From Unilateral Action" to "... assure that personnel decisions are fair and equitable for all concerned." And fourth, Townsend offers the portion in the Handbook outlining Harrison's Open Door Policy review which, according to Townsend, Harrison denied him by performing it in an "arbitrary and capricious, and unfair" manner. This Court has reviewed these portions of the Handbook and, as discussed below, concludes that nothing in the Handbook constitutes an express limitation on Harrison's right to discharge Townsend at will.

Initially, none of the statements, numbers one through three immediately above, constitute the type of express contractual limitation on Harrison's right to discharge Townsend, contemplated in *Weiner* and *Murphy,* necessary to overcome Harrison's right to discharge Townsend at will. These statements are at most expressions of Harrison's general objectives. For example,

there is no reference in these statements (or anywhere else in the Handbook) that discharge may only occur for cause.

■ Particularly with respect to Harrison's statement that its employees had "... an opportunity for a long-range career and job security," New York courts have similarly rejected employees' attempts to characterize a general reference to job security, without explicitly referencing discharge only for cause, as a restriction on an employer's right to discharge at will. *See, Collins v. Hoselton Datsun, Inc.*, 120 A.D.2d 952, 503 N.Y.S.2d 203 (4th Dept. 1986) (Court held that a portion of employer's handbook entitled "Job Security," which assured employees "steady employment" so long as the employee "performed well," did not constitute a contractual commitment barring discharge except for cause).

Additionally, this Court has thoroughly reviewed the section of the Handbook entitled "Open Door Policy" and similarly finds that it does not limit Harrison's unfettered right to discharge Townsend at will.

The Handbook states that "[t]he objective of the Open Door Policy is to make sure that you have an open channel communication with your supervisor and to other managers when you have a question, concern or complaint about any aspect of your relationship with General Motors." The Handbook further states that "[t]he policy is designed to protect you from improper treatment by assuring you an open channel of communication and a thorough review of the facts and circumstances surrounding your situation." According to the Open Door Policy's own terms, "[l]ocal procedure at your unit is designed to give you an answer to your concerns in about 15 working days. Should you request a review at GM Central Office, every effort will be made to resolve your situation within 30 working days."

In this case, Townsend does not contend that his discharge was not reviewed by several levels of Harrison's management—indeed evidence before this Court indicates that Harrison reviewed Townsend's case on several levels. (Hamilton, ¶ 5). Rather, Townsend contends that Harrison effectively denied him this review because, though it did occur, it began six months after discharge and was completed over two years after discharge. Furthermore, Townsend contends the review itself was "... arbitrary and capricious, and unfair ..." because Harrison ignored the testimony of witnesses favorable to Townsend. (Townsend, ¶ 16). Apparently, Townsend is alleging, though he nowhere states it, that the review procedures outlined in the Open Door Policy create a limitation on Harrison's right to discharge Townsend at will.

Harrison contends that the Open Door Policy does not amount to an exception to the employment at will rule. (Reply, p. 2).[2] This Court agrees and finds that there simply is no express language in the Handbook with respect to Harrison's Open Door Policy which limits Harrison's right to discharge Townsend at will.

■ The central theme of Harrison's Open Door Policy is "... that the 'doors' of management are open to ..." Harrison employees "... for any reasonable purpose." By its own terms, it provides Harrison employees an opportunity to review concerns with a supervisor and "... if necessary, with higher levels of management." The policy cautions that "... using the Open Door will not always result in the action you desire." Thus, as it stated in the Handbook, which is what Townsend alleges to have relied on,[3] the Open Door Policy is a procedure offered by Harrison to its employees who seek to review their various concerns "... about any aspect of [their] relationship with [Harrison]" with Harrison management. The Handbook

---

**2.** Harrison contends that it "clearly advised" Townsend of his "rights" within two months of his termination and Townsend "... failed to pursue the policy, putting further investigation on hold until after the Unemployment Insurance Administration hearings." (Reply, p. 2).

**3.** Townsend alleges that he surrendered the security of his collective bargaining position to become a supervisor in reliance on the policies and procedures in the Handbook. (Townsend, ¶ 3).

does not specify any types of concerns which might prompt an employee to seek the Open Door Policy. Nowhere does the Handbook state that the Open Door Policy review must precede discharge, or that discharge in any way is conditioned upon or connected with such review. In fact, nowhere does the Open Door Policy even mention discharge.

This case is similar to *Gmora v. State Farm Mutual Automobile Insurance Company*, 709 F.Supp. 337 (E.D.N.Y.1989) *aff'd*, 888 F.2d 1376 (2d Cir.1989), where the Court granted summary judgment for the employer in plaintiff's wrongful discharge lawsuit. In *Gmora*, plaintiffs alleged breach of an express contractual right to continued employment; this right allegedly emanated from "... a variety of documents," which plaintiffs claimed established that discharge could occur for cause only. Plaintiffs further alleged that the employer failed to adhere to certain "... safeguards and procedures ..." to be followed prior to dismissal.

Relying on *Weiner, Murphy* and *Sabetay*, as this Court must in the present case, and noting that cases allowing wrongful discharge plaintiffs to go forward "... have relied on clear language showing the existence of a contractual right," *Id.* at 340, the *Gmora* Court concluded that the documents allegedly relied upon by plaintiffs reflected

> ... a general corporate policy of rehabilitation rather than dismissal, and, in addition, state the procedures to be followed when certain enumerated conditions are found. The documents are devoid, however, of any reference to an express limitation on the employer's right to terminate employees.

*Id.* at 341. Absent such express limitation the *Gmora* Court refused to restrict the employer's right to discharge without cause.

This case is also similar to *O'Conner v. Eastman Kodak*, 65 N.Y.2d 724, 725, 492 N.Y.S.2d 9, 10, 481 N.E.2d 549, 550 (1985), where the New York Court of Appeals affirmed dismissal of an employee's breach of employment contract claim. In *O'Con-*

*ner*, the employee grounded his claim upon the "... popular perception of Kodak as a 'womb to tomb' employer ..." and Kodak's "Performance Appraisal System," which required periodic evaluation of each employee. The Court found nothing in company handbooks or its Performance Appraisal System establishing that the employer "... promised more than it would strive to maintain stable employment and to evaluate performance fairly." *Id.*

Like the plaintiffs in *Gmora* and *O'Conner*, in this case Townsend alleges that his contractual right to be subject to discharge only for just cause stems from what constitute general policy statements, objectives or procedures aimed not at dismissal but at continued employment. And, like the employees in *Gmora* and *O'Conner*, Townsend can identify no express language showing the existence of a contractual right limiting Harrison's recognized right to discharge him at will.

Lastly, this Court emphasizes that the *Weiner* reasoning has not been extended by the New York Court of Appeals to embrace an *implied* contractual limitation on an employer's right to discharge an employee at will such as Townsend has alleged in this case.

In fact, in *Murphy*, the Court rejected the employee's attempt to imply a covenant of good faith and fair dealing somehow restricting the employer's right to discharge him at will. The Court reasoned that since the law

> ... accords the employer an unfettered right to terminate the employment at any time ... it would be incongruous to say that an inference may be drawn that the employer impliedly agreed to a provision which would be destructive of his right to termination.

58 N.Y.2d at 304–05, 461 N.Y.S.2d at 237, 448 N.E.2d at 91. *See, Wright v. Cayan*, 817 F.2d 999, 1004–05 (2d Cir.1987) *cert. denied*, 484 U.S. 853, 108 S.Ct. 157, 98 L.Ed.2d 112 (1987) (Affirming summary judgment for employer, Court rejected plaintiff appellant's argument that an implied contractual limitation restricted employer's right to discharge her at will.)

Townsend does not even allege that he has an express agreement with Harrison which limits Harrison's right to otherwise discharge Townsend at will. Instead Townsend alleges that "[Harrison's] actions ... constituted a breach of the implied contract of employment between [Townsend] and [Harrison]...." (Complaint, ¶ 9). This Court finds that Townsend's reliance on an implied contractual limitation on Harrison's right to discharge him, rather than an express one, further undermines Townsend's opposition to the present motion.

Therefore, this Court concludes that Townsend had no contractual right limiting Harrison's right to discharge him at will.

## CONCLUSION

In accordance with the discussion above, this Court holds that there exists no genuine issue of material fact with respect to Harrison's liability for breach of an implied employment contract. Therefore, this Court grants defendant Harrison Radiator Division's motion for summary judgment in its entirety.

## ORDER

IT HEREBY IS ORDERED, that this Court GRANTS defendant Harrison Radiator Division, General Motors Corporation's motion for summary judgment in its entirety.

FURTHER, that the Clerk of United States District Court for the Western District of New York is directed to enter final judgment for defendant and to dismiss plaintiff's action in accordance with this decision.

SO ORDERED.