OPINION OF THE COURT
John W. Grow, J.
The issue before the court in this motion is whether plaintiff *897 Clark, a former New York State Trooper, timely commenced her action against defendant State. Her complaint alleges numerous acts of discriminatory and retaliatory conduct by the State occurring between 1983 and October 1985. She alleges violations of her rights under both title VII of the Civil Rights Act of 1964 (42 USC § 2000e et seq.) and the Human Rights Law (Executive Law § 296 et seq.). She concedes, however, that claims arising under title VII are time barred. In its answer, the State alleges as an affirmative defense Clark’s failure to timely commence the action which is governed by a three-year limitation period. (See, Murphy v American Home Prods. Corp., 58 NY2d 293.)
Background
Executive Law § 296 sets forth unlawful discriminatory practices by an employer against an employee. Clark commenced her employment as a New York State Trooper on or about October 1982. In April 1983 she resigned for another position but for personal reasons was allowed to rescind the resignation and resume her Trooper duties. In June 1983 she was assigned to the New Hartford substation where she came under the supervision of, among others, John Coyne. Her complaint alleges acts of sexual harassment by Coyne, claiming a “continuing violation” of her human rights commencing June 1983 and culminating in her forced resignation because of intolerable acts of gender discrimination, unwanted and rebuffed sexual advances by a supervisor, hostile work environment, acts of retaliation, unequal treatment and the ultimate failure of the State to remedy a situation it knew to be discriminatory. She personally delivered her written resignation on October 4, 1985, effective October 7, 1985. This action was then commenced by service upon the State on October 5, 1988. In its motion to dismiss the State contends the last possible date to timely commence the action was October 4, 1988. Clark counters the limitations period did not expire before October 8, 1988, three years after the last alleged discriminatory and retaliatory conduct by the State. The State also denies that any alleged discrimination extended from June 1983 to her resignation date, thus disputing the “continuing violation” theory. However, in reviewing the record the evidence must be assessed in the light most favorable to the nonmovant and the court must draw all reasonable inferences in Clark’s favor. Thus, for purposes of the within motion, the court accepts Clark’s “continuing violation” theory.
*898 The record also reflects Clark was served with departmental charges on or about July 12, 1985 for alleged employment misconduct. The initial hearing regarding those charges was scheduled for August 5, 1985, but was adjourned pursuant to Clark’s request. Her counsel, on September 27, 1985, corresponded with the State Police advising she would submit her resignation conditioned upon receiving payment for accrued unused vacation. As previously stated, on Friday, October 4, 1985, Clark personally appeared at a State Police substation, delivered her written resignation, and turned in her Trooper shield and her issued firearm. The resignation was effective Monday, October 7, 1985. Clark, however, was not on active work duty from October 4th through October 7th, having utilized sick leave.
On October 5, 1985, she went to Old Forge, New York, where she apparently had a chance street conversation with Trooper Ahern and his wife. Apparently unbenownst to her, another Trooper on duty observed them and reported this observation to his superiors. Suspecting possible misuse of her sick leave a State Police Lieutenant on October 8, 1985 directed Trooper Ahern to prepare a memorandum of his meeting with Clark to be placed in her file. Clark contends this event constitutes further discriminatory and retaliatory conduct and that the three-year limitations period therefore did not accrue until October 8, 1985. The State counters that the observation of her at Old Forge and the subsequent reporting of this event cannot, as a matter of law, be discriminatory conduct, and that in any event she was no longer a State employee when Trooper Ahern, on October 8, 1985, was directed to prepare the memorandum.
Law
Public Officers Law § 31 (4) (Resignations) provides a resignation may not be withdrawn except by consent of the body with which it is filed. The record reflects Clark never requested the State Police to rescind or withdraw her formal written resignation which was personally served October 4, 1985, effective October 7, 1985.
Clark contends the State’s discriminatory and retaliatory acts caused her constructive discharge. Constructive discharge occurs when an employer makes working conditions “ ‘so intolerable that [a plaintiff is] forced into an involuntary resignation.’ ” (See Pena v Brattleboro Retreat, 702 F2d 322, 325; Stetson v NYNEX Serv. Co., 995 F2d 355.) The proper focus in determining the accrual date of a cause of action for employ *899 ment discrimination “ Is upon the time of the discriminatory acts, not upon the time at which the consequences of the acts became most painful.’ ” (Delaware State Coll. v Ricks, 449 US 250, 258.) A claim of constructive discharge occurs, at the latest, when the employee submits his or her resignation — irrespective of the effective date of employment termination. (Id.; Simmons v Heyman, 2000 WL 520664, 2000 US Dist LEXIS 5635 [SD NY, May 1, 2000, Buchwald, J.].)
The recent United States Court of Appeals, Second Circuit case, Flaherty v Metromail Corp. (235 F3d 133 [2d Cir 2000]), is further appellate authority regarding the accrual date which commences the limitations period. Flaherty alleged constructive discharge because of age and gender discrimination. In a memorandum to her employer dated June 12, 1997, Flaherty submitted her formal retirement, effective November 1st of that year. The court held “We think that the date that Flaherty’s claim accrued was the date when she gave definite notice of her intention to retire, and the rule should be the same in all cases of constructive discharge.” (Id., at 138.) The court further stated “In the case of constructive discharge, it is only the employee who can know when the atmosphere has been made so intolerable by the discrimination-motivated employer that the employee must leave.” (Id.) In Flaherty, the court found the accrual date to be June 12, 1997, the date she submitted her retirement, not the effective date of the retirement.
While Clark contends the State’s last alleged discriminatory and retaliatory conduct occurred October 8, 1985, the court finds that argument to be misplaced.* Here, Clark submitted her written resignation October 4, 1985. That act, along with the return of her Trooper shield and assigned firearm, signaled her conclusion she could no longer tolerate the alleged discriminatory conduct upon her. Granted that while the resignation was not effective until October 7, 1985, there is no question that she was absent from work duty October 4th through the 7th.
*900 As in Flaherty (supra), this court finds Clark’s claim accrued the date she delivered her written resignation, October 4, 1985, even though not effective until October 7, 1985. The three-year limitations period expired October 4, 1988. Under the facts of this case, what ensued the next three days when she was not on active work duty does not constitute continued discrimination or retaliatory conduct for purposes of postponing the accrual date to commence the action.
Conclusion
Unfortunately, this action was not commenced until October 5, 1988, one day too late. For the reasons stated the State’s motion is granted. Clark’s action is dismissed.

 At oral argument and in a recent memo of law Clark’s counsel submits her allegations of intentional retaliation by members of the State Police occurred through October 8, 1985, when Trooper Ahem was directed to file a memo of their October 5th meeting at Old Forge while she was absent from work on sick leave. That argument misses the mark because the mere reporting of that meeting does not constitute retaliatory conduct to extend the limitations period beyond October 4, 1985, the date she submitted her resignation.