■ THOMAS BEVILACQUE, Respondent-Appellant, v FORD MOTOR COMPANY et al., Appellants-Respondents. [605 NYS2d 356] — In an action to recover damages for breach of contract, violation of the New York State Franchised Motor Vehicle Dealer Act (Vehicle and Traffic Law § 460 et seq.), and violation of the Donnelly Act (General Business Law § 340 et seq.), the defendants separately appeal, as limited by their notices of appeal and briefs, from so much of an order of the Supreme Court, Queens County (Di Tucci, J.), entered July 17, 1991, as denied those branches of their motion which were for summary judgment dismissing the causes of action to recover damages for breach of contract and for violation of the New York State Franchised Motor Vehicle Dealer Act, and the plaintiff cross-appeals, as limited by his notice of cross appeal and brief, from so much of the same order as granted that branch of the motion which was for summary judgment dismissing the cause of action based upon the Donnelly Act.

Ordered that the order is reversed insofar as appealed from,

on the law, and those branches of the defendants' motion which were for summary judgment dismissing the causes of action to recover damages for breach of contract and violation of the New York State Franchised Motor Vehicle Dealer Act are granted; and it is further,

Ordered that the order is affirmed insofar as cross-appealed from; and it is further,

Ordered that one bill of costs is awarded to the appellants-respondents, appearing separately and filing separate briefs.

The plaintiff, Thomas Bevilacque, entered into a Dealer Development Agreement (hereinafter the Agreement) with the defendant Ford Motor Company (hereinafter Ford) to open a car dealership, Best Ford, Inc. (hereinafter Best Ford). Bevilacque became the "Operator" and president, and a member of the Board of Directors of Best Ford, and received common stock in Best Ford for his investment. Ford received all preferred stock and all voting rights in Best Ford.

Insofar as is relevant here, the Agreement could be terminated "at will at any time" by either party. In addition, the Agreement provided in paragraph 10.02,

"Without in any way limiting the right or power of either of the parties hereto to terminate this Agreement at will at any time as provided in Section 10.01 hereof, Ford advises Operator that any of the following events are so contrary to the intent and purpose of this Agreement as to warrant its termination:

"(a) [t]he Dealer incurs losses such that operator's Common Stock has no value, as determined in accordance with Article XI hereof."

During the operation of the dealership, the Board of Directors informed Bevilacque that his common stock had gone from an initial investment value of $50,000 to $3,950, and warned him of Ford's intention to terminate the Agreement if the value reached zero. Thereafter, Bevilacque attempted to sell his interest in the corporation to a third party, Richard Toporek. However, the sale was conditioned upon Ford's acceptance of Toporek as a Ford dealer. Ford found Toporek to be unqualified, and declined its consent to the sale.

The plaintiff, in his cause of action to recover damages for breach of contract, asserts essentially that (1) the Agreement between himself and Ford was improperly terminated, and (2) Ford unreasonably withheld its consent to the sale of the plaintiff's interest in Best Ford to Toporek. With regard to the improper termination of the Agreement, the plaintiff contends

that it could only be terminated for one of the specifically enumerated reasons expressed in paragraph 10.02. The plaintiff contends that the defendants relied upon paragraph 10.02 (a), in that his common stock had allegedly become worthless. However, he asserts that the valuation of his common stock was not done in accordance with the provisions of the Agreement, in that the auditor was not independent, and that he did not use generally-accepted accounting principles. Therefore, the plaintiff alleges a breach of contract on the part of Ford because it was without authority to terminate the Agreement. We disagree.

While the Supreme Court correctly found that issues of fact existed as to whether the plaintiff's common stock was properly valued, these issues of fact are not material to the plaintiff's breach of contract cause of action based on the alleged wrongful termination of the Agreement (see, Sillman v Twentieth Century-Fox Film Corp., 3 NY2d 395). By its own terms, either party could "terminate [the] Agreement at will at any time". Paragraph 10.02 did not limit this right to terminate at will. Therefore, for purposes of the plaintiff's breach of contract cause of action, it does not matter whether the plaintiff's stock was properly valued or not, inasmuch as Ford needed no justification for its termination of the Agreement. The plaintiff argues only that Ford was without authority to terminate the Agreement, but that authority clearly existed.

With regard to Ford's refusal to consent to the sale of the plaintiff's stock to Toporek, we disagree with the Supreme Court's conclusion that an issue of fact exists as to whether such refusal was "commercially reasonable." The plaintiff was required under the contract to first offer his stock to Ford, in writing, at its "fair value," as determined under the Agreement. There is nothing in the record to indicate that the plaintiff ever made such an offer to Ford, and Ford affirmatively asserts that no such offer was ever made. Ford thus was entitled to refuse to consent to the sale. Furthermore, nothing in the Agreement requires Ford to consent to a sale of the plaintiff's common stock to a third party, and no violation of an implied obligation of good faith will be imposed where, as here, it would be inconsistent with the provisions of the Agreement (see, Murphy v American Home Prods. Corp., 58 NY2d 293, 304).

We also agree with the defendants that the claims made under the New York State Franchised Motor Vehicle Dealer Act are barred by the applicable period of limitation. Vehicle

and Traffic Law § 463 (2) (k) provides that the franchisor/manufacturer cannot unreasonably withhold consent to a sale such as the one at bar and it must articulate specific reasons for withholding consent. Upon receipt of such a statement, the party adversely affected by such a decision has 60 days to seek a review thereof. It is undisputed that the plaintiff received a letter from Ford dated September 19, 1984, advising him of its decision not to approve the sale to Toporek. The letter stated Ford's belief that Toporek was not qualified to become a Ford dealer because of his limited experience. Because the plaintiff sent a letter dated October 12, 1984, to Ford, in response to Ford's letter dated September 19, 1984, it is clear that the plaintiff received the September 19, 1984, letter on or before October 12, 1984. Since the action was not commenced until January 21, 1985, more than 60 days passed between the plaintiff's receipt of Ford's notification dated September 19, 1984, and its commencement of the action. Although the plaintiff's letter dated October 12, 1984, asked for "specific reasons" for Ford withholding its consent, we find that the reference in the September 19, 1984, letter to Toporek's "limited experience" constituted a "specific reason" within the meaning of Vehicle and Traffic Law § 463 (2) (k). If the plaintiff believed that the reason given, inexperience, was inadequate, he was free to seek another or amplified response, but this could not toll the running of the period of limitation once a clear explanation for Ford's refusal to consent was in his possession. In any event, we note that in view of our finding that the withholding of Ford's consent to the sale was not unreasonable, a claim under the Act was fatally flawed on the merits.

We have examined the parties' remaining contentions and find them to be without merit. O'Brien, J. P., Copertino, Pizzuto and Santucci, JJ., concur.