Stella STYLIANOU, Plaintiff,

v.

**ST. LUKE'S/ROOSEVELT HOSPITAL CENTER, Defendant.**

No. 94 Civ. 7662 (JGK).

United States District Court, S.D. New York.

Oct. 23, 1995.

John J. Leo, New York City, for plaintiff.

Karen Stefflre, Proskauer Rose Goetz & Mendelsohn, L.L.P., New York City, for defendant.

## OPINION AND ORDER

KOELTL, District Judge:

This case involves an alleged pattern of abusive conduct and eventual improper employment termination of the plaintiff, Stella Stylianou ("Stylianou"), by her employer, defendant St. Luke's Roosevelt Hospital ("St. Luke's"). Stylianou alleges violations of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621 *et seq.*, by the defendant. She argues that her termination was motivated by her age. In addition, Stylianou asserts a claim of intentional infliction of emotional distress against the hospital resulting from the actions surrounding her termination. The defendant moves for summary judgment dismissing only the latter cause of action and Stylianou's resulting claim for punitive damages.

### I.

█ Summary judgment may not be granted unless "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *Gallo v. Prudential Residential Servs., Ltd. Partnership*, 22 F.3d 1219, 1223 (2d Cir. 1994). "[T]he trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue resolution." *Gallo*, 22 F.3d at 1224.

█ The moving party bears the initial burden of "informing the district court of the basis for its motion" and identifying the matter that "it believes demonstrate[s] the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323, 106 S.Ct. at 2553. The substantive law governing the case will identify those facts which are material and

"[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510. In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (citing *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962)); *see also Gallo,* 22 F.3d at 1223.

■ If the moving party meets its burden, the burden shifts to the nonmoving party to come forward with "specific facts showing that there is a genuine issue for trial." Fed. R.Civ.P. 56(e). With respect to the issues on which summary judgment is sought, if there is any evidence in the record from any source from which a reasonable inference could be drawn in favor of the nonmoving party, summary judgment is improper. *See Chambers v. TRM Centers Corp.,* 43 F.3d 29, 37 (2d Cir.1994).

## II.

Stella Stylianou was employed by St. Luke's for over twenty years in different capacities. (*See* Am.Compl. ¶¶ 15, 16, 18.) At the time of her termination on May 6, 1992, Stylianou's title was Coordinator of Doctors' Private Offices. (*See* Am.Compl. ¶¶ 16, 17, 43.) Stylianou asserts that the circumstances which led to her eventual removal from that position began in February 1992, (Am.Compl. ¶ 31), and resulted in her experiencing extreme emotional distress. (Am.Compl. ¶¶ 41, 55, 63.)

In February 1992, Stylianou's supervisor Rosita Juul, Director of Real Estate for St. Luke's, prepared Stylianou's annual performance appraisal for the previous year. (Aff. of Karen Stefflre, dated May 26, 1995 ("Stefflre Aff.") Ex. E.) Stylianou was directed, through a memorandum dated January 27, 1992, to schedule an appointment with Juul to receive her appraisal. (Stefflre Aff.Ex. C.) Stylianou did not schedule any such appointment. (*Id.*) Instead, Stylianou states that she contacted one of Juul's superiors, voicing concerns regarding Juul's ability to evaluate her fairly. (Aff. of Stella Stylianou, dated June 8, 1995 ("Stylianou Aff.") ¶ 8, Ex. A.) Subsequently, a memorandum was hand delivered to Stylianou on February 11, stating that Juul had scheduled her performance appraisal for February 13. (Stefflre Aff., Ex. C.) Stylianou failed to appear for that appointment and failed to explain her absence to her supervisor. (*Id.*)

A written disciplinary warning from Juul was hand delivered to Stylianou by an employee from the Human Resources Department. (*Id.*; Stylianou Aff. ¶¶ 12, 13.) The correspondence stated that if her performance did not improve, her employment could be terminated. On February 21, Juul and an employee from the Human Resources Department went to Stylianou's office to inform her that she was to report for her performance appraisal that day, which Stylianou did. (Stylianou Aff. ¶¶ 9, 14, Ex. B.)

It is Stylianou's contention that these actions were a source of embarrassment to her in the St. Luke's work community. (Stylianou Aff. ¶ 12.) She alleges that the visits by Juul and the employee from Human Resources were done in such a way so that all of her co-employees could observe her being disciplined and were used to intimidate, shock, and place pressure upon her. (Stylianou Aff. ¶ 13.) In addition, Stylianou states that the usual practice followed by the Human Resources Department was to call an employee to the Department's offices if there were sensitive or disciplinary matters to be discussed. (Stylianou Aff. ¶ 9.)

On February 21, Juul gave Stylianou her performance evaluation. (Stylianou Aff.Ex. E.) The evaluation was highly critical of Stylianou's work. Specifically, it took issue with the quality of her work, her inability to meet time constraints, and her difficulty following directions. Stylianou took exception to the evaluation, calling it unfair and inappropriate. In addition, Stylianou restated her concerns regarding Juul's ability to assess her work.

Stylianou describes several other incidents prior to her termination which, she alleges, constitute a pattern of harassment rising to

the level of intentional infliction of emotional distress. In February 1992, Stylianou states that she was called into the office of Dorthea Bell, an individual who worked in the Human Resources Department, and asked whether she wanted to retire, and was told by Bell that she could help her retire. (Stylianou Aff. ¶ 14, Ex. E.) One month later, Bell again called Stylianou into her office to pose similar questions. (*Id.*)

In addition to Bell's queries with regard to retirement, Stylianou alleges that Juul made comments with the intent to intimidate and shock her and which she perceived as threatening. Specifically, Stylianou states that Juul told her that she had fired 200 people and had not lost a case yet. In addition, Stylianou states that Juul asked her how long she had been at St. Luke's although she had access to such records. Also, the plaintiff states that Juul continually said that things were going to change and were not going to be done the old way. (Stylianou Aff. ¶ 15, Exs. F, G.)

Stylianou also points to a job posting and eventual hiring by St. Luke's of an individual to perform a job essentially identical to her position as further evidence in support of her claim. (Stylianou Aff. ¶ 18, Ex I.) In addition, Stylianou maintains that Juul reassigned certain of her duties to other employees and circumvented her authority on several occasions by asking her subordinates to report to Juul on her whereabouts and to fax Juul copies of time records. (Am.Compl. ¶¶ 32–36.) With regard to her discharge, Stylianou states that she was accompanied to her office and only allowed to pack up her personal belongings in the presence of an employee from the Human Resources Department, was not provided with a written response pertaining to her first post-termination meeting, and was not given a second post-termination meeting as soon as she wanted it to occur. (Stylianou Aff. ¶¶ 10, 16–17.)

The plaintiff asserts that she experienced emotional distress as the result of the circumstances surrounding her progressive discipline and subsequent discharge. The defendant contends that these circumstances, even if true, do not establish a claim for intentional infliction of emotional distress as a matter of law. The defendant is correct and summary judgment will be entered dismissing the claim for intentional infliction of emotional distress.

### III.

New York has long recognized a cause of action in tort for the intentional infliction of emotional distress. *See, e.g., Fischer v. Maloney,* 43 N.Y.2d 553, 402 N.Y.S.2d 991, 373 N.E.2d 1215 (1978). In *Fischer,* the New York Court of Appeals accepted the elements of the tort as set out in the Restatement of Torts, Second: "One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress." *Id.,* 43 N.Y.2d at 557, 402 N.Y.S.2d at 992–93, 373 N.E.2d at 1216–17 (quoting Restatement (Second) of Torts § 46(1)). The Court of Appeals continued, stating that: "Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id.* (quoting Restatement (Second) of Torts § 46(1) cmt. d).

To survive a motion for summary judgment, the plaintiff's allegations must satisfy the rule set out in the Restatement and adopted by the Court of Appeals in *Fischer. See Murphy v. American Home Products Corp.,* 112 Misc.2d 507, 447 N.Y.S.2d 218 (Sup.Ct.N.Y.Co.), *aff'd in relevant part,* 88 A.D.2d 870, 451 N.Y.S.2d 770 (1st Dep't 1982), *aff'd in relevant part,* 58 N.Y.2d 293, 300, 461 N.Y.S.2d 232, 235, 448 N.E.2d 86, 89 (1983). The facts alleged by the plaintiff regarding the manner of her termination and the events leading up to it fall far short of this strict standard. Thus, drawing all reasonable inferences in favor of the plaintiff and resolving all ambiguities against the defendant, the plaintiff has still failed to adduce any evidence of extreme and outrageous behavior by representatives of St. Luke's, and,

thus, has failed to state a claim under *Fischer*.

Recent decisions in both federal and state courts interpreting New York law illustrate the very high and exacting standard that must be satisfied to establish extreme and outrageous behavior. In *Murphy v. American Home Products Corp.*, 58 N.Y.2d 293, 461 N.Y.S.2d 232, 448 N.E.2d 86 (1983), the New York Court of Appeals upheld the dismissal of an action for intentional infliction of emotional distress despite allegations by the plaintiff that he was transferred and demoted for reporting fraud at his company, told that he could not be fired because of his age but that he would never advance, discharged and ordered to leave immediately, forcibly and publicly escorted from the building by guards when he returned the next day to pick up his belongings, and ordered out of the building two weeks later when he came back, as instructed, to pick up his possessions, which were then dumped in the street. *See Murphy*, 112 Misc.2d at 508–09, 447 N.Y.S.2d at 219–20.

In affirming the dismissal, the Court of Appeals stated that the allegations fell "far short" of the standards for an intentional infliction of emotional distress claim. *Murphy*, 58 N.Y.2d at 303, 461 N.Y.S.2d at 236, 448 N.E.2d at 90. In addition, the Court ruled that because there is no cause of action in tort in New York for abusive or wrongful discharge of an at-will employee, plaintiffs should not be allowed to circumvent that conclusion or to subvert the traditional at-will contract rule by casting their causes of action in terms of a tort of intentional infliction of emotional distress. *Id.*

Recent decisions from the Court of Appeals for the Second Circuit have reaffirmed the limited nature of the tort of intentional infliction of emotional distress. In *Spence v. Maryland Cas. Co.*, 995 F.2d 1147, 1158 (2d Cir.1993), the Court of Appeals affirmed summary judgment for the defendants despite allegations by the plaintiff of a pattern of harassment and intimidation by his supervisors lasting two years and resulting in severe stress-related health problems. The plaintiff alleged that his supervisors threatened him with termination on several occasions, mocked him because of his age, and ridiculed him as a result of his stress-related ailments. The plaintiff claimed that his supervisor "told me that he was indirectly responsible for the termination of several thousand people and ... that he personally terminated 2–or 300 people and that when it came to terminating me, he would do that, too." *Id.*, 995 F.2d at 1151. In addition, when the plaintiff informed the supervisor of his stress-related medical ailments and told him that the ailments were a result of the supervisor's threats, the supervisor replied "good, that's what I intended, I wanted you to get the message, that's good." *Id.*, 995 F.2d at 1152.

While plaintiff's supervisors were demoted and disciplined by the company for their intimidatory methods, the Court nevertheless found that the "[d]efendants' criticisms of [the plaintiff's] job performance and their conditional threats of termination ... fall far short of the 'extreme' and 'outrageous' conduct that is actionable as an intentional infliction of emotional distress." *Id.*, 995 F.2d at 1158. In addition, the Court reaffirmed the *Murphy* court's admonition against plaintiffs' evading the at-will contract rule by casting causes of action as intentional infliction of emotional distress claims. *Id.*, 995 F.2d at 1158 (citing *Murphy*, 58 N.Y.2d at 303, 461 N.Y.S.2d at 236, 448 N.E.2d at 90).

In *Martin v. Citibank, N.A.*, 762 F.2d 212 (2d Cir.1985), the Court of Appeals for the Second Circuit relied on *Murphy* in reversing a decision not to grant judgment notwithstanding the verdict. The plaintiff in *Martin* brought an action against her employer for discrimination in employment and intentional infliction of emotional distress. The action stemmed from Citibank's selection of six minority employees for polygraphing during an investigation of missing funds at the bank. The bank tested only seven employees, of which five were black, one was Hispanic, and one was white, despite a larger number of employees who could have handled the disputed funds. Despite being exonerated through the testing, the plaintiff, who was black, was upset that six out of the seven tested were minorities. Subsequently, the plaintiff requested and received a transfer to another branch. At the new branch, the plaintiff complained of harassment as a result

of the polygraphing. After four weeks, the plaintiff resigned. Using *Murphy* as a basis, the Court found that the allegations in question did not meet the standards for an intentional infliction of emotional distress claim. *Martin*, 762 F.2d at 220. *See also Gay v. Carlson*, 60 F.3d 83, 89 (2d Cir.1995) (affirming dismissal of claim for intentional infliction of emotional distress based on allegations defendants had made up their accounts of plaintiff's alleged misconduct to induce the plaintiff's employer to fire him; allegations did not allege conduct going "beyond all possible bounds of decency")

Likewise, the allegations in the present case fall far short of the requirements for the tort of intentional infliction of emotional distress. Even accepting as true for the purposes of this motion all of the plaintiff's allegations, the actions by plaintiff's supervisors fell far short of the extreme and outrageous behavior standard. Threats of termination do not rise to the level of extreme and outrageous behavior. *See Spence*, 995 F.2d at 1158; *Murphy*, 58 N.Y.2d at 303, 461 N.Y.S.2d at 236, 448 N.E.2d at 90. Similarly, a supervisor's comments with regard to the number of people that individual has fired fall far short of the standard. *Spence*, 995 F.2d at 1158. The course of conduct here was insufficient to satisfy the exacting standards required in other cases.

Because the plaintiff's allegations do not satisfy the standard required for a claim for intentional infliction of emotional distress, the defendant's motion for summary judgment dismissing her claim for intentional infliction of emotional distress is granted.

## IV.

The defendant's motion for summary judgment on plaintiff's claim for punitive damages resulting from her intentional infliction of emotional distress claim must similarly be granted. Dismissal of plaintiff's claim for intentional infliction of emotional distress requires that her claim for punitive damages be dismissed as well because punitive damages may not be sought as a separate cause of action. *See, e.g., Weir Metro Ambu–Ser-*

*vice, Inc. v. Turner*, 57 N.Y.2d 911, 456 N.Y.S.2d 757, 442 N.E.2d 1268 (1982).

For all of the foregoing reasons, the defendant's motion for partial summary judgment dismissing the claims for intentional infliction of emotional distress and for punitive damages is granted.

**SO ORDERED.**