[829 NYS2d 30]

THELMA BAILEY, Respondent, v NEW YORK WESTCHESTER SQUARE MEDICAL CENTRE et al., Appellants.

First Department, January 9, 2007

### APPEARANCES OF COUNSEL

*Epstein Becker & Green, P.C.*, New York City (*Clare M. Sproule, Barry A. Cozier* and *Michael F. McGahan* of counsel), for appellants.

*Ian Belinfanti*, New York City, for respondent.

### OPINION OF THE COURT

SWEENY, J.

This appeal raises the question of whether plaintiff met the requirements to maintain an action for employment discrimination pursuant to Executive Law § 296 and New York City Administrative Code § 8-107. We hold that plaintiff failed to meet those requirements and her complaint must be dismissed.

Plaintiff, a self described "Jamaican-American female of African heritage," is a licensed New York State registered nurse with a B.A. in health care administration and training as a midwife. She began employment with defendants on a part-time basis in 1970 and became a full-time employee in 1971. She returned to part-time status after having a child in 1976 and

resumed full-time employment in 1980 as a charge nurse. Plaintiff became coordinator of the critical care unit in 1985, a position she held until 1994 when she was promoted to the newly created position of assistant vice-president of nursing with the title AVP/patient care. She was recommended for this position by defendant Witt and approved by defendant Kopman. For the next four years, plaintiff supervised both the critical care and medical-surgical units of the hospital.

These two units were separated in 1998 when the hospital underwent a reorganization. Plaintiff was assigned as AVP for the medical-surgical unit and Teresa Mandarino, a white female, 10 years younger and who had previously been supervised by plaintiff, was promoted to AVP/critical care, which included the surgical intensive care unit and emergency room.

Another reorganization took place in November 2000 which required the medical-surgical units to report directly to Witt. Because of the new direct reporting requirement, Witt determined there was no longer need for two AVPs on the day shift. Believing that having one AVP on the evening shift (3:00 to 11:00 P.M.) would have a positive impact on staff performance and patient satisfaction, Witt assigned plaintiff, then age 59, to the evening shift and changed her title to AVP/3-11 shift. Mandarino remained on the day shift.

Beginning in the mid-1990s, due to a decrease in patient volume, hospital revenues began to decline, resulting in the need to reduce expenses significantly. Kopman directed his executive staff, including Witt, to evaluate every position and create a list of positions that could be eliminated without replacement while maintaining quality of care.

In her analysis of the two AVP nursing positions, Witt determined that they were different from each other, with the AVP position held by Mandarino as the more important of the two. A comparison of the persons holding those positions revealed that Mandarino had a Master's degree in nursing, a certificate in emergency nursing (CEN), had emergency room experience, was certified in adult critical-care nursing, had completed all requirements to be a pediatric advanced life support provider and was certified as an instructor for the advanced cardiovascular life support instruction program, none of which plaintiff had. Significantly, the hospital obtained the "911" designation from the New York City Fire Department in 2001 and was required to have staff with emergency room experience and the CEN in order to maintain the "911" designation. The executive

committee put plaintiff's position on the list of recommended job eliminations and Kopman approved the list.

Plaintiff and other employees were terminated in writing from their positions on November 19, 2001. Her position was eliminated and she was not replaced by another person. She was given a package of materials explaining her COBRA rights and 401k benefits. She was not offered severance pay and made no inquiry about it at that time. She subsequently obtained other employment but at a lower salary.

Plaintiff commenced this action alleging causes of action for age, race and gender discrimination in violation of Executive Law § 296 and New York City Administrative Code § 8-107 based upon her termination, breach of contract for failure to provide severance pay and intentional infliction of emotional distress. Defendants answered and asserted a number of affirmative defenses.

After completion of discovery, defendants moved for summary judgment, arguing, inter alia, that the series of layoffs were made without regard to race, age or gender, and were driven by the declining financial situation of the hospital. Plaintiff initially did not respond to the motion and the court, sua sponte, extended her time to file opposition papers. Plaintiff did not meet the new submission date set by the court and when she finally did file those papers, defendants' counsel rejected them as untimely. Defendants inquired of the court whether plaintiff's papers would be considered and, if so, requested time to submit reply papers. No response was given by the court. However, the court's decision on the motion took into account plaintiff's opposition papers. The IAS court found that plaintiff made a prima facie case of race, age and gender discrimination and also determined there were issues of fact as to whether defendants' claim of legitimate business reasons for plaintiff's termination was merely a pretext for discrimination. Defendants' motion was denied.

Defendants sought reargument, maintaining that they were unfairly prejudiced by the court's failure to consider their reply papers. The court denied reargument and adhered to its original decision. This appeal ensued.

■ Plaintiff has the initial burden of establishing, by a preponderance of the evidence, a prima facie case of racial discrimination in employment. To meet this burden, plaintiff must show that (1) she is a member of a protected class, (2) she was qualified to hold the position, (3) she was terminated from

employment or suffered other adverse employment action, and (4) the discharge or other adverse action occurred under circumstances giving rise to an inference of discrimination (*Forrest v Jewish Guild for the Blind*, 3 NY3d 295, 305 [2004]).

Likewise, plaintiff bears the initial burden of establishing a prima facie case of age discrimination (*Ferrante v American Lung Assn.*, 90 NY2d 623, 629 [1997]). She can meet this requirement only if she can demonstrate that (1) she was in a protected age group, (2) she was terminated, and (3) she was sufficiently qualified to hold her position. In addition, if she does not produce direct or statistical evidence that would logically support an inference of discrimination, she must show her position was subsequently filled by a younger person or held open for a younger person (*Ioele v Alden Press*, 145 AD2d 29, 35 [1989]).

If plaintiff meets either of these burdens, the employer must then produce admissible evidence that clearly sets forth legitimate, independent and nondiscriminatory reasons to rebut the presumption of discrimination (*see St. Mary's Honor Center v Hicks*, 509 US 502 [1993]; *see also Ferrante*, 90 NY2d at 629). If the employer produces such evidence, the burden shifts back to plaintiff, who must then show that the proffered reason was merely a pretext for discrimination by demonstrating "*both* that the reason was false, *and* that discrimination was the real reason" (*St. Mary's Honor Center*, 509 US at 515; *see also Brennan v Metropolitan Opera Assn.*, 284 AD2d 66, 71 [2001]). However, "The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff" (*Texas Dept. of Community Affairs v Burdine*, 450 US 248, 253 [1981]).

To prevail on a motion for summary judgment, an employer "must demonstrate either the employee's failure to establish every element of intentional discrimination, or—having offered legitimate, nondiscriminatory reasons for the challenged action—the absence of a material issue of fact as to whether its explanations were pretextual" (*Messinger v Girl Scouts of U.S.A.*, 16 AD3d 314, 314 [2005]; *see also Forrest*, 3 NY3d at 305).

Unquestionably, plaintiff is part of a protected class as an African-American woman over 60 years of age who was terminated from her position. Defendants argued, however, that they met their burden of showing a nondiscriminatory reason for plaintiff's termination. Depositions, affidavits and comparative

lists of personnel termination during all three company-wide layoffs were submitted in support of their claim that plaintiff's termination was the result of a business decision driven essentially by adverse financial circumstances. "The downsizing of a company's employment rolls, due to business failings and economic setbacks, constitutes a sustainable rebuttal and explanation for the decision to terminate a particular employee, when demonstrated virtually without contradiction, as in this case and record" (*Matter of Laverack & Haines v New York State Div. of Human Rights*, 88 NY2d 734, 738 [1996]). Since plaintiff's position was eliminated and she was not replaced, she cannot maintain a cause of action for age discrimination (*id.* at 740). The record demonstrates that plaintiff's termination was part of three separate, company-wide layoffs, each of which consisted of other male and female employees of mixed ages and races, and that the reduction in the work force was based on the need of the hospital to reduce expenses in the face of declining revenues.

Moreover, plaintiff failed to show that the two AVP positions were analogous and interchangeable and that her transfer and subsequent termination raised an inference of discrimination. Plaintiff does not contest that the AVP/critical care position was the more important of the two, especially given the "911" designation for the emergency room operations which brought patients into the hospital, thus increasing its revenues. Plaintiff was not qualified for this position, either by education or by experience. Her claim that defendants never encouraged her to continue her education does not change this result, particularly since there was no evidence that she was prevented from seeking educational advancement, or that the hospital sent Mandarino for the necessary education and training. Although plaintiff questioned the business judgment of the layoffs, a "discharged employee must do more than challenge the employer's decision as contrary to 'sound business or economic policy,' since such an argument does not give rise to the inference that the employee's discharge was due to age discrimination" (*Ioele*, 145 AD2d at 37).

In short, defendants presented valid rather than pretextual reasons why Mandarino was retained as the sole AVP, and plaintiff failed to prove by a preponderance of the evidence that the legitimate reasons offered for her termination were merely a pretext for discrimination (*see Grafe v Iona Coll.*, 281 AD2d 347, 348 [2001]).

■ Similarly, plaintiff's cause of action for entitlement to severance pay is without merit. She admitted in her deposition that she had no written evidence to support her allegation of a severance benefits policy, and that she never saw such policy in writing or was told by anyone in authority that such policy existed. None of the persons laid off with plaintiff received severance pay. One situation where a payment was made to an employee leaving the hospital involved the assistant director of finance who retired in 1995 and received four months' "recognition pay" for discovering over $1 million in billings that had not been previously submitted for payments. Any additional benefits such as extension of salary or COBRA benefits for departing employees were negotiated on a case by case basis, in exchange for general releases and not as a result of any hospital policy.

To prevail on a breach of contract claim in the absence of a written agreement, plaintiff must produce evidence in admissible form demonstrating that defendant hospital had a regular practice of making severance payments to terminated employees, and that she relied on such practice in continuing her employment (see Skarren v Household Fin. Corp., 296 AD2d 488, 490 [2002]). This she failed to do.

■ Plaintiff's claim for intentional infliction of emotional distress must also be dismissed. Liability for this cause of action requires conduct that is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community" (Murphy v American Home Prods. Corp., 58 NY2d 293, 303 [1983], quoting Restatement [Second] of Torts § 46, Comment d). In an at-will employment situation such as here, termination of employment alone "may not form the basis of an intentional infliction of emotional distress cause of action" (Fama v American Intl. Group, 306 AD2d 310, 311 [2003], lv denied 1 NY3d 508 [2004]; see also Abeles v Mellon Bank Corp., 298 AD2d 106 [2002]). Plaintiff presented no evidence to support her claims of the requisite "outrageous" behavior on the part of defendants and thus failed to raise triable issues of fact such as to preclude a grant of summary judgment.

Accordingly, the order of the Supreme Court, Bronx County (Patricia Anne Williams, J.), entered July 25, 2005, which denied defendants' motion for summary judgment dismissing the complaint, should be reversed, on the law, without costs, and the motion granted. The Clerk is directed to enter judgment in

favor of defendants dismissing the complaint. The appeal from the order, same court and Justice, entered October 19, 2005, which denied reargument, should be dismissed, without costs, as taken from a nonappealable paper.

TOM, J.P., ANDRIAS, SAXE and GONZALEZ, JJ., concur.

Order, Supreme Court, Bronx County, entered July 25, 2005, reversed, on the law, without costs, and defendants' motion for summary judgment dismissing the complaint granted. The Clerk is directed to enter judgment in favor of defendants dismissing the complaint. Appeal from order, same court, entered October 19, 2005, dismissed, without costs, as taken from a nonappealable paper.